1  RIMON, P.C.
   Karineh Khachatourian (SBN 202634)
2  karinehk@rimonlaw.com
   Phillip K. Wang (SBN 186712)
3  phillip.wang@rimonlaw.com
   Nikolaus A. Woloszczuk (SBN 286633)
4  nikolaus.woloszczuk@rimonlaw.com
   2479 E. Bayshore Road, Suite 210
5  Palo Alto, California 94303
   Telephone: 650.461.4433
6  Facsimile: 650.461.4433

7  Attorneys for Defendant,
   BARRACUDA NETWORKS, INC.
8

9                 UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12

13  OPTRICS INC.,                    | Case No. 17-cv-04977-RS-TSH

14         Plaintiff,                | **BARRACUDA NETWORKS, INC.'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND COUNTERCLAIMS**

15     v.

16  BARRACUDA NETWORKS, INC., a
    Delaware Corporation, and DOES 1 through   Date:   May 28, 2020
17  10, inclusive,                             Time:   1:30 p.m.
                                               Dept.:  Courtroom 3 – 17th Floor
18         Defendant.                          Judge:  Honorable Richard G. Seeborg

19                                  **[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................................1

II. OPTRICS CANNOT UNDO ITS STIPULATION ......................................................1

    A. Optrics Is Bound by Its Lead Counsel's Actions .........................................1

    B. Optrics Fails to Demonstrate That the Stipulation Is Unenforceable.........2

    C. The Stipulation Was Not the Result of Fraud .............................................2

    D. Optrics' Claim That It Never Saw the Stipulation Is Not Credible ..........3

III. BNI'S AMENDMENTS ARE NOT FUTILE ..............................................................4

    A. Optrics Sold CudaMail...................................................................................4

    B. BNI Properly Pled Alter Ego Liability in Its Proposed Amendment........5

        1. BNI Plausibly Alleged "Unity of Interest and Ownership" ...........6

        2. BNI Plausibly Alleged an Inequitable Result..................................7

    C. Alter Ego Liability Can Be Applied to Contract Claims ...........................8

    D. Alter Ego Liability Is a Valid Cause of Action............................................8

IV. BNI DID NOT UNDULY DELAY ................................................................................9

V. OPTRICS WOULD NOT BE PREJUDICED BY BNI'S AMENDMENT ........................10

VI. CONCLUSION ..............................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abels v. JBC Legal Group, P.C.*,
   229 F.R.D. 152 (N.D. Cal. 2005) ................................................................................................9

*Blanton v. Womancare, Inc.*,
   38 Cal. 3d 396 (1985) .................................................................................................................2

*Bowles v. Reade*,
   198 F.3d 752 (9th Cir. 1999) ....................................................................................................10

*Gerritsen v. Warner Bros. Entm't Inc.*,
   116 F. Supp. 3d 1104 (C.D. Cal. 2015) ......................................................................................8

*Heartland Payment Systems, Inc., v. Mercury Payment Systems, LLC*,
   No. C 14-0437 CW, 2016 WL 304764 (N.D. Cal. Jan. 26, 2016) ..............................................5

*Leek v. Cooper*,
   194 Cal. App. 4th 399 (2011) .....................................................................................................8

*Link v. Wabash R. Co.*,
   370 U.S. 626 (1962) ...................................................................................................................1

*Mallot & Peterson v. Director, Office or Worker's Compensation Programs*,
   98 F.3d 1170 (1996) ...................................................................................................................2

*Mesler v. Bragg Mgmt. Co.*,
   39 Cal. 3d 290 (1985) .............................................................................................................6, 7

*Microsoft Corp. v. Hon Hai Precision Indus. Co.*,
   No. 19-CV-01279-LHK, 2020 WL 836712 (N.D. Cal. Feb. 20, 2020) ......................................4

*Mossimo Holdings LLC v. Haralambus*,
   No. CV 14-05912 DDP, 2015 WL 476298, at *3 (C.D. Cal. Feb. 3, 2015) ...............................8

*In re Optical Disk Drive Antitrust Litig.*,
   No. 10-MD-02143-RS, 2017 WL 11513316 (N.D. Cal. Dec. 18, 2017) ....................................7

*Pac. Bell Tel. Co. v. 88 Connection Corp.*,
   No. 15-CV-04554-LB, 2016 WL 3257656 (N.D. Cal. June 14, 2016) .......................................7

*PAI Corp. v. Integrated Sci. Sols., Inc.*,
   No. C-06-05349 JCS, 2008 WL 11404541 (N.D. Cal. Feb. 15, 2008) .......................................5

*Seymour v. Summa Vita Cinema, Inc.*,
    809 F.2d 1385 (9th Cir. 1987)................................................................................................2

*Sonora Diamond Corp. v. Superior Court*,
    83 Cal. App. 4th 523 (2000)..................................................................................................6

*Stewart v. Screen Gems-EMI Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) .....................................................................................6

*Toho-Towa Co. v. Morgan Creek Prods., Inc.*,
    217 Cal. App. 4th 1096 (2013)..............................................................................................8

*United States v. McGregor*,
    529 F.2d 928 (9th Cir. 1976).................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 13 ..........................................................................................................................5

Fed. R. Civ. P. 15(c).......................................................................................................................5

Fed. R. Civ. P. 41(a)(i)-(ii).............................................................................................................2

## I. INTRODUCTION

Optrics, Inc.'s ("Optrics") opposition to Barracuda Network, Inc.'s ("BNI") Motion for Leave to Amend ("Motion") is procedurally improper, in violation of this Court's order, and asks for extraordinary relief while being wrong on the law and the facts. What should have been a simple unopposed motion to amend has instead resulted in Optrics' 23-page dissertation on all perceived wrongs Optrics has endured from its former counsel and vendors, BNI, and this Court. Now that its admitted strategy to delay this case has failed, Optrics attempts to undo the stipulation it made, which, if successful, will once again turn this litigation on its head.

## II. OPTRICS CANNOT UNDO ITS STIPULATION

Optrics knew exactly what it was doing when it stipulated to dismiss its complaint with prejudice and agreed not to oppose BNI's Motion *for any reason*. ECF 226. Optrics' Bording Ostergaard testified that Optrics agreed to the stipulation to avoid BNI's Motion for Sanctions and to further delay the case.[1] ECF 264-6, ¶ 20. Optrics' failures cannot undo a valid stipulation that was reviewed and entered as an order of this Court. If Optrics wanted to set aside the order, it knows there is a separate procedure. ECF 264-5 ("Op."), 17:23-24. For this reason alone, this Court should strike Optrics' Opposition.

### A. Optrics Is Bound by Its Lead Counsel's Actions

Optrics agreed to the stipulation after an arms-length negotiation. Optrics' attempt to undo the act of its attorneys runs counter to the legal system's reliance on representative litigation. A party cannot get a redo by claiming their attorney did not inform them of every detail. *See Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962) ("Any other notion would have grave consequences, wherein the Court could no longer rely on the fact that each party is deemed bound by the acts of [their] lawyer-agent ….") (quotation marks omitted). Thus, it does not matter whether Terreri "disclosed to Optrics the full terms of the stipulation or the potential risks associated with it." Op., 7:12-13, 9:18-27. As Optrics' attorney, Terreri was within the scope of his agency:

[T]he client as principal is bound by the acts of the attorney-agent within the scope of

---

[1] In light of Optrics' gamesmanship admission, BNI requests permission to seek its fees and costs for having to respond to Optrics' Opposition.

his actual authority (express or implied) or his apparent or ostensible authority; or by unauthorized acts ratified by the client.

*Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, 403 (1985) (citations and quotation marks omitted).[2]

Optrics claims that Terreri misled Optrics and "sold [Optrics] out in the hopes of exiting the case, currying favor with BNI, and avoiding personal sanctions in violation of his fiduciary duties." Op., 18:24-28. Optrics provides zero evidence supporting this wild claim. And Optrics provides no support that Terreri "exceeded any possible scope of agency when signing the stipulation." Op., 19:3-6. Instead, Optrics admits that it authorized Terreri to enter into the stipulation and dismiss its complaint with prejudice. Op., 9:12-18. Regardless, Terreri, as Optrics' lead counsel, had at least apparent authority to agree to the stipulation for Optrics and that is enough. *Blanton*, 38 Cal. 3d at 403.

### B. Optrics Fails to Demonstrate That the Stipulation Is Unenforceable

Optrics argues that the stipulation is unenforceable because it is "a blank check on any amendment BNI wants." Op., 17:24-28. Not so. BNI's motion remains subject to this Court's approval, and Optrics and the proposed new defendants ("PNDs") can still seek Rule 12 dismissal of the amended claims. Finally, Optrics claims that the stipulation required consideration. Op., 18:1-2. Optrics provides no authority for its premise that a stipulation is only enforceable with consideration. Regardless, Optrics *did* receive something from the stipulation; the delay of its depositions and the ability to dismiss its claims without a motion. Fed. R. Civ. P. 41(a)(i)-(ii).[3]

### C. The Stipulation Was Not the Result of Fraud

Optrics claims that the stipulation was "Procured By Fraud" by its attorney Terreri. Op., 17:18-20;18:24-28. Optrics, however, needs to show that BNI committed fraud against it and the Court. Optrics has not accused BNI of fraud, nor is there any basis to do so. However, Optrics

---

[2] California law applies because agent authority derives from state law. *See Mallot & Peterson v. Director, Office or Worker's Compensation Programs*, 98 F.3d 1170, 1173 n. 2 (1996) *overruled on other grounds by Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 826 (9th Cir. 2012).

[3] Though not addressed by Optrics, the standards for withdrawing a stipulation are set forth in *United States v. McGregor*, 529 F.2d 928, 931-32 (9th Cir. 1976) and *Seymour v. Summa Vita Cinema, Inc.*, 809 F.2d 1385, 1388 (9th Cir. 1987).

unfairly impugns BNI by theorizing that it "knew" it created a conflict of interest between Optrics and Terreri by threatening to seek sanctions against him, and that BNI leveraged this to obtain the stipulation. Op., 18:7-18. It was known that BNI would seek sanctions against Optrics and Terreri for their disregard of court orders. BNI put Optrics and Terreri on notice of this months before *Optrics* approached BNI to dismiss its complaint with prejudice, and before BNI even filed its motion for sanctions. Optrics' suggestion that BNI strategically drove a wedge between Optrics and Terreri is without merit or evidence and is unseemly. Similarly, Optrics' suggestion that BNI should have sought a "conflict waiver" makes no sense. Op., 19:13-18. It was not BNI's responsibility to invade the attorney-client relationship and insinuate a conflict. Finally, Optrics' accusations that BNI "turned a blind eye," "overreached," was trying to "get away" with something, and that its counsel exchanged "high-five's" are demeaning to the legal profession. Optrics decided to dismiss its claims with prejudice and fire its counsel at the eleventh hour to try and gain a strategic advantage. BNI had nothing to do with Optrics' own decision making.

### D. Optrics' Claim That It Never Saw the Stipulation Is Not Credible

Optrics' claimed ignorance regarding the stipulation is not credible. First, Optrics admitted that its principals were in Terreri's offices while the parties negotiated the stipulation. Op., 19:13-15; ECF 264-6, ¶¶ 19-20. Second, emails confirm that Optrics' counsel was consulting with Optrics regarding the details. KK Decl.[4], Ex. 1 ("[Terreri] is in a meeting but is reviewing and modifying the stipulation."), Ex. 2 ("[T]he decisions that had to be made were difficult and could not be made without client approval.");("If Optrics signs the declaration, will Barracuda agree to limit the scope of the deposition tomorrow? If so, what is the scope?). Third, Optrics did not accept BNI's stipulation as drafted, it was revised and exchanged before filing. KK Decl. Ex. 2. Fourth, when Optrics sought an extension to oppose BNI's Motion, Optrics only argued that BNI's proposed amendment was not "consistent with the stipulation." Ex. 3. It cannot be believed that Optrics was in its counsel's office negotiating a stipulation to drop its entire case with prejudice, but that it never saw a draft. However, if this Court is inclined to credit Optrics' claim,

---

[4] References to "KK Decl." are to the Declaration of Karineh Khachatourian, filed herewith.

1  BNI respectfully requests limited discovery on Optrics' awareness of the stipulation as Optrics has
2  waived attorney-client privilege.

3  **III.   BNI'S AMENDMENTS ARE NOT FUTILE**

4  Optrics has not met its heavy burden to prove futility. "[A] proposed amendment is futile
5  … 'only if no set of facts can be proved under the amendment to the pleadings that would
6  constitute a valid and sufficient claim or defense." *Microsoft Corp. v. Hon Hai Precision Indus.*
7  *Co.*, No. 19-CV-01279-LHK, 2020 WL 836712, at *14 (N.D. Cal. Feb. 20, 2020) (quoting
8  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

9  **A.   Optrics Sold CudaMail**

10  Optrics argues at length that it will prevail against BNI's claim that Optrics attempted to
11  sell or sold CudaMail. Op., 2-5. While this determination is for another day, the evidence
12  overwhelmingly supports BNI. Optrics sold CudaMail to j2, a multi-billion-dollar company,
13  which then announced this in a press release. Ex. 4. And Optrics produced documents confirming
14  that ■■■
15  ■■■
16  ■■■
17  ■■■
18  While Optrics may have *attempted* to cloak the sale as something else, everyone knew it was an
19  acquisition. ■■■
20  ■■■
21  ■■■
22  ■■■
23  ■■■
24  ■■■

25  Even if Optrics did not sell CudaMail, Optrics still triggered Section 14.13 of the Reseller
26  Agreement ■■■
27  ■■■
28  ■■■ Optrics also triggered Section 14.13 by ■■■

4
BARRACUDA'S REPLY ISO MOTION FOR LEAVE TO AMEND COUNTERCLAIMS;
CASE NO. 17-CV-04977-RS-TSH

1  ██████████████████████████████████████████████████
2  ██████████████████████████████████████████████████
3  ██████████████████████████████████████████████████
4  ████████████████████████████████ The entire purpose of CudaMail was to sell
5  BNI products. ████████████████████████████████████
6  ███ Optrics has no use for the IP now, other than to continue to drag BNI through years of
7  litigation for something it no longer sells or needs.
8      Finally, Optrics argues that the counterclaims BNI filed *two years ago* are barred by the
9  statute of limitations ████████████████████████████████
10 ██████████████████████████████████████████████████
11 ████████████████████████ And Optrics acknowledges that BNI raised its disagreement in
12 January 2017, just days after learning of Optrics' breach through j2's press release. Op., 6:16-19.
13 ██████████████████████████████████████████████████
14 █████████████████████████████████████ *PAI Corp. v. Integrated Sci.*
15 *Sols., Inc.*, No. C-06-05349 JCS, 2008 WL 11404541, at *15 (N.D. Cal. Feb. 15, 2008).
16      Even if BNI's claims had to be brought within one year, they effectively were through
17 Optrics' filing of its complaint, to which BNI's counterclaims relate back under Fed. R. Civ. P.
18 15(c) because they are compulsory under Fed. R. Civ. P. 13. Moreover, the statute of limitations
19 for compulsory counterclaims is tolled as of the date of the complaint. *See Heartland Payment*
20 *Systems, Inc., v. Mercury Payment Systems, LLC,* No. C 14-0437 CW, 2016 WL 304764 (N.D.
21 Cal. Jan. 26, 2016). Finally, Optrics' argument that BNI's proposed amended counterclaims 1-3
22 are barred by the statute of limitations fails for these same reasons. Op., 17:3-18.
23      **B.   BNI Properly Pled Alter Ego Liability in Its Proposed Amendment**
24      BNI sufficiently pled alter ego liability. Under California law "[t]he alter ego doctrine
25 arises when a plaintiff comes into court claiming that an opposing party is using the corporate

---
[5] ██████████████████████████████████████████

form unjustly and in derogation of the plaintiff's interests." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985) (internal citation omitted). California's approach is flexible as "[t]here is no litmus test … rather the result will depend on the circumstances of each particular case." *Id.* However, there are two general requirements "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual [or parent corporation] no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Id.* (quotation marks and citation omitted). The alter ego doctrine is an equitable one, as its "essence … is that justice be done." *Id.* at 301.

### 1. BNI Plausibly Alleged "Unity of Interest and Ownership"

Optrics argues that BNI has not plausibly alleged a unity of interest and ownership between Optrics and the PNDs, because BNI purportedly has not alleged facts giving "rise to a plausible inference that the [PNDs] dictated every facet of Optrics' business or exercised manipulative control." Op., 13:11-13. But that is not the standard as the inquiry is far broader and includes the following factors:[6]

> [C]ommingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other. … [I]nadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers. No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied.

*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538–39 (2000).

BNI's amendment sufficiently alleges facts bearing on these factors. For example, BNI pled identical equitable ownership (ECF 250-13, ¶¶ 2-7, 13-14, 37, 62), comingling of funds (*id.*, ¶¶ 8, 37, 62), that Optrics partners are individually liable for Optrics' debts (*id.*, ¶ 9), and use of the same office (*id.*, ¶ 10, 16, 62). Though many of these allegations are made on information and belief because BNI only learned of Optrics' and the PNDs' corporate shell game in February, such allegations *are* sufficient at the pleading stage. *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F.

---

[6] Even if this were the standard, BNI has pled these facts. ECF 250-13, ¶ 64.

Supp. 3d 938, 962-63 (N.D. Cal. 2015) ("the FAC alleges—albeit, on information and belief—a particular relationship … in terms of the extent of control, the existence of a single enterprise, and methods of passing funds among the entities. Thus, the information-and-belief allegations in the FAC are sufficient to state a plausible claim that [the entities] have a unity of interest.")

### 2. BNI Plausibly Alleged an Inequitable Result

Optrics also argues that BNI has not plausibly alleged facts supporting the "inequitable result" element, claiming that pleading the possibility of an inability to enforce a judgment is insufficient. Op., 13:26-14:27. But the authority that Optrics relies on has been criticized by Courts in this district: "it is not that the failure to satisfy a creditor cannot be inequity, full stop; it is that the inability to pay a creditor, *standing alone*, cannot be inequity — but may be if it occurs in connection with a 'unity of interest.'" *Pac. Bell Tel. Co. v. 88 Connection Corp.*, No. 15-CV-04554-LB, 2016 WL 3257656, at *6 (N.D. Cal. June 14, 2016) (emphasis in original) (distinguishing *Sonora*, 83 Cal. App. 4th 523); *see also In re Optical Disk Drive Antitrust Litig.*, No. 10-MD-02143-RS, 2017 WL 11513316, at *10 (N.D. Cal. Dec. 18, 2017) (finding inequitable result raised, in part, by allegations that parent had left subsidiary insolvent).

Even if Optrics were correct that pleading undercapitalization and inability to collect a judgment is not enough, BNI has pled more. BNI pled that Optrics' parent entities caused Optrics' inability to pay debts as a result of an intentional scheme to funnel assets into the PNDs while leaving Optrics drained. ECF 250-13, ¶¶ 63-64. BNI's allegations go beyond a mere disappointed creditor, and extend to a litigant who would be prejudiced by a defendant whose insolvency was *designed* and *manipulated* through the bad faith actions of its parent corporations.

Optrics and the PNDs have been surprisingly frank about their bad-faith undercapitalization, telling BNI that it was not concerned about a motion for sanctions or adverse judgment because Optrics had ensured it would be insolvent and would just declare bankruptcy, maybe even transferring the CudaMail IP to a BNI competitor. KK Decl., ¶2. It is for this situation that alter ego liability exists. Optrics also states that its abuse of the corporate structure to withhold documents in discovery "are not a proper basis for piercing the corporate veil …" Op., 14:24-27. But alter ego is an equitable doctrine. *Mesler*, 39 Cal. 3d at 301. And courts may consider non-

enumerated factors "under the particular circumstances of each case." *Leek v. Cooper*, 194 Cal. App. 4th 399, 418 (2011) (quotation marks and citation omitted). Optrics' bad-faith conduct and improper concealment of documents bears on the inequitable result inquiry.

In summary, BNI's proposed amendment is not futile because it sufficiently pleads facts supporting alter ego liability. Further, in its Motion, BNI presented testimony from Optrics' Rule 30(b)(6) designee that supports many of the allegations described above. *See, e.g.*, Mot., 1:25-5:14.  However, if this Court disagrees, BNI requests the opportunity to take the court ordered Rule 30(b)(6) depositions of Optrics—which Optrics unilaterally cancelled.

### C. Alter Ego Liability Can Be Applied to Contract Claims

Optrics submits that alter-ego entities cannot be liable for contract claims if they did not sign the contract. Op., 15:1-16:3. Optrics is wrong. A plaintiff who pleads single enterprise theory (which is simply the alter ego doctrine applied to entities and not individuals), "may apply … breach of contract claims to [single-enterprise defendants] as though they were, essentially partners in a common venture." *Mossimo Holdings LLC v. Haralambus*, No. CV 14-05912 DDP JEMX, 2015 WL 476298, at *3 (C.D. Cal. Feb. 3, 2015); *see also, e.g.*, *Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096 (2013).

Optrics' reliance on dicta in *Gerritsen* is misplaced. *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1135 n.194 (C.D. Cal. 2015). Nor does the holding of *Dynamic Measurement Grp., Inc. v. Univ. of Oregon* help Optrics. There, the entity that the plaintiff sought to bring alter ego contract claims against did not exist at the time of the contract and Oregon law was applied. 2016 WL 2348714, at *4 (D. Or. Feb. 29, 2016).  BNI can bring contract claims against the PNDs based on a single enterprise theory.

### D. Alter Ego Liability Is a Valid Cause of Action

Optrics argues that an alter ego claim is not a valid cause of action. Op., 16:14-17:2. But the 9th Circuit authority that Optrics cites is not so broad. *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, was applying federal, not California, law on alter ego liability, and was doing so in the context of ERISA claims that are strictly limited by federal law (ERISA § 502(a)). *See* 185 F.3d 978, 985 (9th Cir. 1999). Here, California law applies and BNI's claims are not constrained

by ERISA. Moreover, the cite Optrics relies on is dicta as the holding had nothing to do with dismissal of an alter ego liability cause of action and the court actually upheld the district court's finding that it had jurisdiction over the request to pierce the corporate veil. Optrics' reliance on *Ahcom, Ltd. v. Smeding* is also misplaced, as the holding was *not* that veil-piercing is not a cause of action, rather the holding concerned whether creditors are precluded from pursuing alter ego claims in bankruptcy proceedings. *See, e.g.* 623 F.3d 1248 (9th Cir. 2010). And, in fact, the court actually *reversed* the district court's dismissal of the plaintiff's veil-piercing claim. *Id.*

Even if Optrics was correct that alter ego liability is "only a means of imposing liability" its argument elevates form over substance. BNI's alter ego allegations and listing of its cause of action has put Optrics and the PNDs on notice of BNI's intention to hold all of the defendants jointly and severally liable, and there is no need to dismiss anything. Plaintiffs, including Magistrate Judge Hixson prior to joining the bench, have pled alter ego liability as a cause of action and it is rarely objected to. Exs. 18-19.

## IV. BNI DID NOT UNDULY DELAY

Optrics argues that BNI unduly delayed because it was informed about Optrics' corporate structure a few months earlier. Op., 19:19-22:10. This is a red herring. The evidence justifying amendment was not that Optrics was part of a complex corporate structure, it was that Optrics was using that corporate structure in bad faith. BNI first had reason to believe this from the Rule 30(b)(6) deposition testimony of Optrics, on February 7, 2020, when Shaun Sturby testified that he and the other Optrics principals were relying on an illusory distinction between Optrics Partnership and Optrics Inc. to withhold discovery. Mot., 4:8-5:14. Subsequently, Optrics represented that BNI could never collect on a judgment or sanctions award because it had ensured it would be insolvent, would declare bankruptcy, and might transfer the CudaMail IP to a BNI competitor. KK Decl., ¶ 2.  BNI thereafter promptly sought amendment. This is not undue delay. *See Abels v. JBC Legal Group, P.C.*, 229 F.R.D. 152, 156 (N.D. Cal. 2005) (finding no undue delay where amendment sought approximately one month after learning of PNDs' identity, even though the plaintiff "*could* have learned of [new defendant] sooner.")

Further, even if Optrics were right that some evidence was available earlier, it was Optrics'

9

delay that led to production just a few months before the close of fact discovery. For example, BNI sought Optrics' tax returns through RFPs, with Optrics' response due in April 2019. Yet it took multiple rounds of briefing and this Court's order to finally compel production. ECF 114, 2:20-3:1. Further, BNI was diligently seeking information on Optrics' corporate structure and was going to take a Rule 30(b)(6) deposition on that topic as well as the tax returns on February 12, 2020, but Optrics dismissed its claims the day before and bargained to put-off the deposition. BNI has since moved to compel the depositions. ECF 240.

Regardless, "[u]ndue delay by itself … is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) (citations omitted). Optics has not argued that BNI made its amendment in bad faith. Optrics failed to demonstrate futility. *Supra,* § III. As explained below, Optics cannot demonstrate prejudice.  BNI's delay, if any, in seeking amendment is not sufficient grounds to deny the motion.

### V. OPTRICS WOULD NOT BE PREJUDICED BY BNI'S AMENDMENT

Optrics argues that amendment would prejudice it through delay and increased costs.  Op., 22:11-23:7. But discovery remains open pending BNI's motion to compel depositions. ECF 240. And only minimal discovery is needed, such as discovery of Optrics' corporate structure, Optrics' funneling of assets to perpetuate its insolvency scheme, and production of documents that Optrics has been shielding by claiming they belong to the PNDs. Nor would the PNDs need to conduct discovery or be subjected to prejudice; Optrics admits that the PNDs are corporate entities "belonging wholly to each of the individual principals of Optrics" who have been involved in this litigation from day one. Op., 23:3-4. They are not being caught by surprise.

Finally, Optrics cannot now credibly protest delay in the case schedule. Not after it has sought and obtained multiple extensions of the case schedule. *See, e.g.*, ECF 167. Not after it just recently sought "a 90-day extension of all case deadlines." ECF 254, 2:23-26. Not after stipulating (just three days ago) to pushing back other case deadlines. ECF 269. And particularly not after admitting that it fired its lawyers on the eve of the close of fact discovery in a strategic attempt to "hopefully have the Court stay the lawsuit." ECF 264-6, ¶ 21.

## VI. CONCLUSION

Optrics' filing of its Opposition to BNI's Motion violated this Court's Order and its stipulation with BNI.  Further, Optrics failed to demonstrate that leave to amend should not be granted where BNI's amendments are not futile, were sought promptly, and Optrics cannot show prejudice.  Respectfully, this Court should grant BNI's Motion as well as leave to seek its fees and costs for replying to Optrics' inappropriate Opposition.

Dated: May 15, 2020

Respectfully submitted,

RIMON, P.C.

By: */s/ Karineh Khachatourian*
Karineh Khachatourian
Nikolaus A. Woloszczuk
Phillip K. Wang

Attorneys for Defendant,
BARRACUDA NETWORKS, INC.