1   CHRIS KAO, SBN 227086
    ckao@kaollp.com
2   ANDREW HAMILL, SBN 251156
    ahamill@kaollp.com
3   KAO LLP
    201 Mission Street, Suite 1930
4   San Francisco, California 94105
    Tel. 415.539.0996
5   Fax. 866.267.0243
6
7   Attorneys for Plaintiff OPTRICS INC.
8
9                    UNITED STATES DISTRICT COURT
10                  NORTHERN DISTRICT OF CALIFORNIA
11                      SAN FRANCISCO DIVISION
12
13
14  OPTRICS INC.,                          Case No. 17-cv-04977-RS (TSH)

15              Plaintiff,                 **OPTRICS INC.'S OPPOSITION TO
                                           DEFENDANT BARRACUDA NETWORKS,
16          v.                             INC.'S MOTION FOR SANCTIONS**

17  BARRACUDA NETWORKS, INC., et al.       **Date:**  June 18, 2020
                                           **Time:** 10:00 a.m.
18              Defendant.                 **Dept.:** Courtroom G – 15th Floor
                                           **Judge:** Hon. Magistrate Thomas S. Hixson
19
20
21                                         **[REDACTED VERSION OF DOCUMENT(S)
                                           SOUGHT TO BE SEALED]**
22
23
24
25
26
27
28

---

**OPTRICS' OPPOSITION TO BNI'S MOTION FOR SANCTIONS; CASE NO. 17-cv-04977-RS (TSH)**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF CASE .................................................................................... 2

III.    STATEMENT OF FACTS.................................................................................. 4

      A.      Optrics Inc. ................................................................................................. 4

      B.      Retention and Reliance on Terreri Law ................................................... 4

      C.      Optrics' Good Faith Efforts at Document Collection and Reliance Upon Its U.S. and
            Canadian Counsel During The Document Collection Process. ....................................... 5

            1.      Document Preservation .......................................................................... 5

            2.      Initial E-Discovery Attempts Driven By Terreri Law ........................... 5

            3.      Optrics Has Never Acted Improperly .................................................... 5

            4.      Initial Subpoena to j2 Global ................................................................ 6

            5.      Although Terreri Law Violated Court Orders From the Start, These Were Not
                Understood by Optrics. .......................................................................... 6

            6.      Retention of Heuristica To Address Canadian Confidentiality Issues.................... 7

            7.      Retention of ESI Attorneys Who Managed Optrics' E-Discovery Collection and
                Production Pursuant to Best Practices .................................................... 8

            8.      Additional Failure By Terreri Law ........................................................ 9

            9.      Ultimately, Terreri Law Failed to Produce a Privilege Log or Manage Completion
                of Optrics' Document Productions ....................................................... 10

      D.      After Judge Hixson's February 7, 2020 Order, Terreri Law Abandoned Ship.......... 11

IV.     ARGUMENT...................................................................................................... 12

      A.      Terreri Law Is The Responsible Party For Each and Every One Of BNI's Allegations
            of Deficiency. ........................................................................................... 12

      B.      Terminating and Preclusionary Sanctions Are Not Warranted................................... 14

            1.      Terminating Sanctions Are Not Approperiate Here. ........................... 14

    a)  Third Factor: Any Alleged Noncompliance With Discovery Orders is Not Tied to any of BNI's Remaining Counterclaims ...................................... 15

    b)  Fifth Factor: This is Optrics' First Sanction in this Lawsuit ................... 17

    c)  Optrics Did Not Act in Bad Faith .............................................................. 17

   2.  Preclusionary Sanctions Are Inappropriate. ...................................................... 18

**C.  Any Monetary Sanctions Should Be Levied Against Terreri Law Alone.................... 19**

**D.  BNI Overreaches on Its Claims For $450,000 in Fees/Costs While Failing to Show Causation. ................................................................................................................... 20**

**V. CONCLUSION** ...................................................................................................................... **25**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*, 2013 WL 4511925 (N.D. Cal. Aug. 23, 2013)............ 12

*Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406 (9th Cir. 1990) .......................................................... 15

*Bruner v. City of Phoenix*, 2020 WL 554387 (D. Ariz. Feb. 2, 2020)....................................................... 13

*Choudhuri v. Wells Fargo Bank, N.A.*, 2017 WL 5598685 (N.D. Cal. Nov. 21, 2017) ........................ 18

*Community Dental Svcs. v. Tani*, 282 F.3d 1164 (9th Cir. 2002) ............................................................. 17

*Conn. Gen. Life Ins. Co., v. New Images of Beverly Hills*, 482 F.3d 1091 (9th Cir. 2007)..................... 16

*Cooley v. Leonard*, 2019 WL 6250964 (N.D. Cal. Nov. 22, 2019) .......................................................... 19

*Crawford v. Katz*, 32 A.3d 418 (D.C. App. 2011)..................................................................................... 13

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178 (2017) ............................................................. 20

*Hyde & Drath v. Baker*, 24 F.3d 1162 (9th Cir. 1994) ..................................................................... 15, 17

*In re Napster Inc. Copyright Litig.*, 462 F.Supp.2d 1060 (N.D. Cal. 2006)....................................... 18, 19

*Lee v. Walters*, 172 F.R.D. 421 (D. Or. 1997) ......................................................................................... 20

*MAI Systems Corp. v. Walbert Enterprises, Inc.*, 116 F.3d 485, 1997 WL 312595 (9th Cir. 1997)........ 20

*Malone v. U.S. Postal Service*, 833 F.2d 128 (9th Cir. 1987) .................................................................. 14

*Pearlstein v. BlackBerry Limited*, 332 F.R.D. 117 (S.D.N.Y. 2019)........................................................ 24

*Rhea v. Washington Dep't of Corr.*, 2010 WL 5395009 (W.D. Wash. Dec. 27, 2010)........................... 13

*Roadway Exp., Inc. v. Piper*, 447 U.S. 752 (U.S. 1980)..................................................................... 19, 20

*Rubin v. Belo Broadcasting Corp.*, 769 F.2d 611 (9th Cir. 1985) ...................................................... 15, 17

*Sali v. Corona Regional Medical Center*, 884 F.3d 1218 (9th Cir. 2018).............................................. 19

*Sas v. Sawabeh Info. Svcs.*, 2015 WL 12711646 (C.D. Cal. Feb. 6, 2015) ............................................. 18

*U.S. v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365 (9th Cir. 1980) .................................... 18

*Valley Engineers Inc. v. Electric Engineering Co.*, 158 F.3d 1051 (9th Cir. 1998 .............................. 16

*Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585 (9th Cir. 1983) ............................................... 15, 16, 17

**Rules**

Cal. Rules Prof. Conduct, Rule 1.7(b) ..................................................................................................... 13

Civil L.R. 37-4 .......................................................................................................................................... 20

Fed. R. Civ. Proc. 37(b) ........................................................................................................................... 18

State Bar of California Formal Opinion No. 1997-151 ............................................................................ 13

1
## I.     INTRODUCTION

2      Plaintiff Optrics Inc. ("Optrics") has already surrendered its case in chief, not because of any

3 determination on the merits or the exposure of any weaknesses in its case, but because Barracuda

4 Networks, Inc. ("BNI") succeeded in overwhelming Optrics' former counsel, Herbert Terreri and Grace

5 Neibaron ("Terreri Law") through the discovery process.  Specifically, BNI took Judge Hixson's

6 authorization to file a sanctions motion and exploited a conflict of interest between Optrics and Terreri

7 Law to obtain a one-sided stipulation with Mr. Terreri that was never shown to Optrics.  That egregious

8 stipulation hand-cuffed Optrics into dismissing all of its claims without receiving anything in return,

9 while allowing BNI to continue seeking recovery on its counterclaims.

10      It was Optrics that originally brought this action against BNI for *inter alia* breach of contract and

11 unfair competition.  After incurring over $888,000 USD in litigation and e-discovery costs (with over

12 $427,000 USD paid to Mr. Terreri and $121,000 USD paid to Ms. Neibaron), Optrics – through no fault

13 of its own – was left with no claims or legal counsel.  Instead, Optics is now faced with defending itself

14 from this current sanctions motion, which arises entirely from Terreri Law's mismanagement of

15 discovery and failure to obey Court Orders.

16      BNI's motion seeks sanctions against the wrong party, as it is Terreri Law that is responsible for

17 the alleged violations and not Optrics.  There should be no dispute that Terreri Law, as Optrics' former

18 counsel, is ultimately responsible for document searching, collection, and production and creating a

19 privilege log.  This is especially true here, where Optrics, a Canadian company, is facing its first U.S.

20 litigation.  Optrics complied with all of Terreri Law's instructions during discovery.

21      Additionally, BNI vastly overreaches in the sanctions it seeks.  First, BNI fails to provide

22 sufficient grounds for seeking terminating and/or preclusionary sanctions.  Because BNI has obtained

23 the evidence it needs and has represented to the Court that it is ready for trial, such extreme sanctions are

24 inappropriate.  Rather BNI should only be entitled to monetary sanctions against Terreri Law.  Second,

25 BNI improperly attempts to add its attorneys' fees and costs for ordinary litigation expenses into its

26 sanctions calculation.  As one example, BNI included its fees and costs for opposing an administrative

27 motion by Terreri Law seeking extension of time due to its business being impacted from the fires that

28

1  ravaged Sonoma County – a motion unrelated to the allegedly sanctionable conduct, and a motion that

2  BNI ultimately lost.

3       Accordingly, BNI's motion for sanctions against Optrics must be denied.  And any sanctions

4  BNI seeks against Terreri Law should be limited to BNI's costs and fees directly caused by Terreri

5  Law's allegedly sanctionable conduct, which should not exceed $25,000.

6  **II.  STATEMENT OF CASE**

7       Optrics, founded in 1995, is a professional-engineering firm specializing in network-centric

8  consulting solutions, products and services.  Declaration of Bording Ostergaard ("Ostergaard Decl."), at

9  ¶ 2.  In June 2004, Optrics entered into a reseller agreement with BNI to become a reseller of BNI's

10  spam-filtering appliances and software.  *Id.*, at ¶ 3.  Additionally, and separate to becoming a BNI

11  reseller, Optrics purchased an end-user license agreement to use BNI's spam firewall appliance product

12  as a client of BNI for use in Optrics' data center.  *Id.*, at ¶ 4.  At this time and as part of its data center

13  division, Optrics began using BNI's spam filtering appliance as part of its email spam filtering service

14  for hosted websites.  *Ibid.*  Later on in 2005, Optrics saw a market opportunity for a standalone managed

15  service, offering email spam filtering for off-premise clients, and launched this new service.  *Id.*, at ¶ 5.

16  Optrics coined the mark CudaMail for this new service.  *Ibid.*  Only Optrics has ever used and continues

17  to use the CudaMail mark in commerce.  *Id.*, at ¶ 5.

18       In 2013, nine years after BNI entered into a reseller agreement with Optrics, BNI decided to go

19  public under the ticker symbol "CUDA."  (Dkt. No. 265-17 [BNI's Oct. 1, 2013 Form S-1]).  As

20  explained in Optrics' Second Amended Complaint ("SAC"), it was at this time that BNI launched a

21  campaign to take over various intellectual property that was previously acknowledged by BNI as

22  belonging to Optrics.  (Dkt. No. 51 at ¶ 55).  BNI began using its reseller partnership business with

23  Optrics as both a carrot and a stick in order to accomplish its objectives.  ████████████

24  ████████████████████████████████████████

25  ████████████████████████████[1]  BNI set forth its

26

27  ─────────────────

28  [1] ████████████████████████████████████████

position in an email to Optrics during negotiations that culminated in the 2013 Reseller Agreement. Ostergaard Decl., at ¶ 8; (Dkt. No. 264-7 [Aug. 28, 2013 email thread between S. Valentim and B. Ostergaard]).

Nevertheless, the parties ultimately settled upon the 2013 Reseller Agreement, of which Section 14.13 provides:



Ostergaard Decl., at ¶ 8.

In 2016, Optrics' CudaMail business faced an industry that was consolidating to the Cloud. *Id.*, at ¶ 9. j2 Global, Inc. ("j2"), the owner of The Electric Mail Company ("EMC") and its FuseMail brand, was a competitor of Optrics' CudaMail managed service. In August 2016, j2 approached Optrics with an unsolicited offer to purchase CudaMail. *Ibid*. Optrics declined. *Ibid*. j2 then offered a series of counter-proposals that ultimately resulted in Optrics entering into a transaction with j2's Canadian subsidiary EMC ("the Optrics-EMC Agreement"). *Ibid*. Specifically, in exchange for a lump sum cash payment, Optrics agreed to try and persuade a subset of its loyal CudaMail customers to migrate to EMC's FuseMail platform. *Ibid*. Importantly, there was no assignment of contracts. *Ibid*. The customers that moved to FuseMail were all on a monthly-subscription basis and not under contract, with their choice to move to FuseMail being wholly voluntary. *Ibid*. Not all chose to make the move. *Ibid*. Some chose to move to other industry providers and some chose to stay with CudaMail. *Ibid*.

In January 2017, an eager BNI, still expanding into the Cloud-based spam filtering and cybersecurity services space after its 2015 launch of its "Cudaxxx" brand family, falsely accused Optrics of breaching the 2013 Reseller Agreement through Optrics' transaction with EMC and attempted to invoke Section 14.13. Ostergaard Decl., at ¶ 10; (Dkt. No. 265-15 [May 18, 2015 article in The Register]); (Dkt. No. 275-4 [Khachatourian letter dated January 23, 2017]). Optrics carefully and fully explained to BNI that there had been no sale of CudaMail, no license and no transfer of any CudaMail

1   IP, and no other triggering event - only the sale of a partial client list.  Ostergaard Decl., at ¶ 10; (Dkt.

2   No. 264-11) [Optrics' April 10, 2017 letter]).  In that period, j2 also explained the same by phone and in

3   written communications with BNI's counsel.  Ostergaard Decl. at ¶ 10; (Dkt. No. 264-12 [Exh. E to

4   EMC January 25, 2017 letter]).

5          Nevertheless, on July 26, 2018, **seventeen months** after sending its initial letter, BNI filed

6   counterclaims accusing Optrics of breaching the 2013 Reseller Agreement through its transaction with

7   j2 and EMC.  *See* (Dkt. No. 63).

8   **III.**     **STATEMENT OF FACTS**

9       **A.**     **Optrics Inc.**

10         Optrics is a professional-engineering firm based in Canada, comprising of about six employees.

11  Ostergaard Decl., at ¶ 2;  Declaration of A. Hamill ("Hamll Decl."), Exh. B (September 27, 2019 Rule

12  30(b)(6) deposition of Blair Zingle, 16:8 - 9).  While its key decision-makers are talented technical

13  people, they are not attorneys.  Because of Optrics' small size it does not have general counsel.  Prior to

14  this lawsuit, Optrics had virtually no litigation experience – only a debt collection action in Canada –

15  and had never conducted electronic discovery.   Ostergaard Decl., at ¶¶ 11 & 13.

16       **B.**     **Retention and Reliance on Terreri Law**

17         When Optrics' dispute with BNI became unresolvable, Optrics retained its US trademark counsel

18  Grace Neibaron.  *Id*., at ¶ 11.  After filing a trademark opposition on behalf of Optrics, Neibaron

19  represented that she and Herbert Terreri could work as a team to represent Optrics in the instant

20  litigation.  *Ibid.*  Optrics had separate retention agreements with Neibaron and Terreri, though Neibaron

21  and Terreri represented themselves to practice together under the "Law Offices of Herbert L. Terreri"

22  banner.  *Ibid*.

23         Optrics made it known to Terreri Law that it did not have prior U.S. litigation experience.  *Ibid*.

24  Optrics relied upon its U.S. counsel as fiduciaries and followed their advice.  *Id*., at ¶ 27.

25

26

27

28

**C.    Optrics' Good Faith Efforts at Document Collection and Reliance Upon Its U.S. and Canadian Counsel During The Document Collection Process.**

**1.    Document Preservation**

Although Terreri Law never provided specific instructions regarding a document preservation or back-up plan, Optrics certainly never intentionally destroyed documents and did not destroy any documents to the best of its knowledge.  *Id*., at ¶ 12.  And to the best of its knowledge, there would not have been any relevant documents that would have been lost in the ordinary course of business as Optrics' policy is not to delete documents.  *Ibid*.  This retention policy is why Optrics was able to produce over 500,000-plus documents to BNI in response to its document requests, some going back to as early as the year 2000.  *Ibid*.

**2.    Initial E-Discovery Attempts Driven By Terreri Law**

BNI served its first set of document requests on March 21, 2019.  *Id*., at ¶ 13.  Terreri Law initially gave Optrics only general suggestions, including sending a link to an article about "self-collection."  *Ibid*.  In early May 2019, Terreri Law retained e-discovery vendor Cloud Nine, who did not actively manage the data collection process either.  *Ibid*.  Optrics received instructions from Terreri Law and Cloud Nine and then took what it thought was reasonable action in collecting responsive documents based on these instructions and its understanding of BNI's RFPs.  *Ibid*.  Optrics worked this way with Terreri Law and Cloud Nine until August 2019 as Optrics had no reason not to trust its U.S. counsel's directions.  *Ibid*.  The level and type of work being performed was consistent with the only other litigation Optrics had been involved in to date - a debt collection action in Canada.  *Ibid*.  The discovery process appeared to be well on track to Optrics, with 17.86 gigabytes of data provided to Cloud Nine and Terreri Law in this manner with Optrics understanding that an excess of 300,000 documents were subsequently produced to BNI from April 2019 to August 2019.  *Ibid*.

**3.    Optrics Has Never Acted Improperly**

BNI has intentionally mischaracterized Optrics' client-driven data backup, management, and collection as follows:

- Mr. Ostergaard has never altered emails or altered and resaved emails in his email client inbox as alleged.  BNI has not explained how someone could alter and resave an inbox email

as this is a function specifically locked out in all email clients.  If this functionality in fact existed, then email would cease to be a form of evidentiary documentation.  *Id*., at ¶ 14.

- BNI's accusations that Optrics improperly printed Eudora emails to PDF and all attachments were lost are unreasonable.  As part of Optrics' initial document collection, Mr. Ostergaard printed emails to PDF from his Eudora legacy email client because Cloud Nine's software could not process data from Eudora.  As part of this collection, all emails to or from j2 and all related attachments were collected and produced.  Additionally, the vast majority of the emails in Mr. Ostergaard's Eudora email system were also in the email accounts of other Optrics key personnel, all of which were collected in their entirety first by Cloud Nine and then once again later by Heuristica.  The contents of these emails and the email file attachments would also have been identical to what BNI received from j2's independent discovery production. Had the email and attachment contents from these two sources not been identical, BNI would certainly have seized upon the opportunity to voice its outrage over such a production impropriety.  At any rate, Mr. Ostergaard's Eudora files were transferred in their entirety to Heuristica later in 2019 for additional production, which BNI previously admits to knowing in its Motion.  *Id*., at ¶¶ 14-15; (Dkt. No. 234 at pp. 11:23, 17:1-2).

- BNI alleges that Optrics intentionally failed to preserve data, had no data backup plan prior to 2016 and implies that Optrics only keeps 30 days of data backed up.  These allegations are all false and intentionally misleading.  The fact that Optrics produced over 500,000+ documents to BNI with some going as far back as the year 2000 is clear evidence that Optrics reliably backs up its data and has done so for over two decades.  Ostergaard Decl., at ¶ 12 - 13; (Dkt. No. 234 at p. 9:8-14).

- Without any evidence, BNI has accused Optrics of intentionally producing large quantities of irrelevant documents when the true reason for Optrics' large production is BNI's insistence on overbroad RFPs.  One RFP by itself included a request for every document and email containing the word "Barracuda," which BNI refused to narrow down despite multiple meet-and-confer efforts.  This RFP alone represented hundreds of thousands of responsive documents, which BNI insisted on receiving.  Ostergaard Decl., at ¶¶ 17; (Dkt. No. 100).

### 4.    Initial Subpoena to j2 Global

On March 19, 2019, two days ***before*** BNI served its first set of document requests on Optrics, BNI subpoenaed j2 Global, requesting documents relating to the Optrics-EMC transaction.  Hamill Decl., at ¶ 5, Exh. C (Notice of Subponea).

### 5.    Although Terreri Law Violated Court Orders From the Start, These Were Not Understood by Optrics.

Although Terreri Law began violating court orders as soon as discovery began, the serious nature of these violations was unknown to Optrics, including the fact that:

1

2

- Right out of the gate, Terreri Law got in trouble for going "radio silent" in the meet-and-confer process and not joining BNI's first two discovery letters (Dkt. Nos. 83, 87), in violation of Judge Seeborg's (Dkt. No. 72) and Judge Laporte's (Dkt. No. 86) case management orders. (Dkt. No. 88 ([June 28, 2019 discovery order]).

3

4

- In Judge Laporte's first discovery order (Dkt. No. 88 [June 28, 2019 order]), the Court chastised Optrics for repeatedly promising to produce documents by a certain date and failing to do so.

5

6

7

- In Judge Laporte's second discovery order, the Court again reprimanded Optrics, this time for failing to produce documents, not meeting and conferring by July 3, and filing a letter brief without documentation after the ordered deadline. (Dkt. No. 91 [July 11, 2019 discovery order]).

8

9

Ostergaard Decl. at ¶ 18. Terreri Law did not explain the ramifications of violating court orders to Optrics. *Ibid*. At most Optrics understood BNI was demanding more and more to which Optrics endeavored to comply. *Ibid*. Optrics did not know and would not have appreciated the significance of Terreri Law violating court orders. *Ibid*.

### 6.     Retention of Heuristica To Address Canadian Confidentiality Issues

In August of 2019, Optrics retained Heuristica to assist with increasing discovery burdens. *Id*., at ¶¶ 19, 21. First, Optrics understood that BNI was insisting on every document containing the word "Barracuda" which would pull over 700,000 emails alone with many of these emails known to contain sensitive confidential client information governed by Canadian law. *Id*., at ¶¶ 12, 19. What Optrics failed to understand was that Terreri Law had failed to negotiate an efficient solution and had waived all of its objections through previous failures. (Dkt. No. 91 [July 11, 2019 discovery order]). Second, Optrics' Canadian counsel Jim Swanson had brought to Optrics' attention that it would be in violation of Canadian confidentiality and privacy laws by producing documents that exposed its clients' information. *Id*., at ¶ 19. At this point, Optrics had already produced hundreds of thousands of responsive emails between Optrics and U.S. companies, but had withheld communications with its clients due to applicable Canadian confidentiality and privacy laws. *Id*., at ¶¶ 12, 19. Mr. Swanson advised that if production was ordered by a Canadian court pursuant to the U.S. protective order registered under Letters Rogatory, Optrics would be insulated from any privacy law violations. *Id*., at ¶ 19. Thus, Terreri Law raised this issue with the Court in July, 2019 (Dkt. No. 95 at p. 7) and, in response to a

1  request by the Court, on August 23, 2019 Mr. Swanson provided a declaration to the Court explaining

2  the Canadian law concerns (Dkt. No. 106-1).  After discovery disputes were reassigned from Judge

3  Laporte to Judge Hixson, Optrics again raised this issue to the Court.  (Dkt. No. 122 [Oct. 18, 2019 Joint

4  Discovery Letter]).  Meanwhile, in order not to unnecessarily hold up the production process, Optrics

5  had retained Heuristica, a Canadian law firm and e-discovery provider able to host Optrics' confidential

6  documents in Canada and began preparing these documents for production while the Letters Rogatory

7  issue was before the Court.  Ostergaard Decl., at ¶ 21.  This retention of Heuristica was also done under

8  the approval of Terreri Law and Canadian counsel.

9  Optrics would ultimately incur over $92,000 USD on Heuristica's additional services in a good-

10  faith effort to try and meet all of its obligations to BNI, to the Court and its court orders, and to Optrics'

11  obligations under Canadian law.  *Id.*, at 29.

### 7.  Retention of ESI Attorneys Who Managed Optrics' E-Discovery Collection and Production Pursuant to Best Practices

14  Terreri Law had designated Bording Ostergaard and Blair Zingle as Optrics' Rule 30(b)(6)

15  witnesses on document collection. *Id.*, at 20.  Mr. Terreri prepared them by spending around one hour

16  with each of them on the day before the depositions.  *Ibid.*

17  Following the September 27, 2019 depositions, Optrics realized that in order to address further

18  concerns brought forward by BNI, Optrics would need to conduct document collection in a manner that

19  placed all decision-making in the hands of it counsel.  *Id.*, at 21.  Realizing that Terreri Law was not up

20  to the task of e-discovery, Optrics next retained ESI Attorneys, a U.S. law firm specializing in e-

21  discovery.  *Ibid.*  ESI Attorneys along with the assistance of Heuristica conducted interviews of each of

22  Optrics' key personnel and provided detailed instructions for document collection.  *Ibid.*  As part of this

23  process, Heuristica remotely logged in to assist in assessing Optrics' electronic data.  *Ibid.*  On October

24  11, 2019, pursuant to the direction and instructions of ESI Attorneys and Heuristica, Optrics sent its

25  electronic data, including its entire email database, to Heuristica.  *Ibid.*  Optrics also provided a list of

26  attorneys and law firms with whom Optrics had communicated over 18+ years so that Heuristica could

27  hold back privileged documents and provide these documents to ESI Attorneys and Mr. Terreri to create

28  a privilege log.  *Ibid.*

On October 25, 2019, the Court ruled that Letters Rogatory were not necessary and ordered Optrics to produce its remaining documents by November 7.  (Dkt. No. 136).  Heuristica, already at work in the background since August, promptly completed a significant production of responsive documents that were delivered to BNI on November 8, 2019, holding back only those that hit on privileged search terms.  Ostergaard Decl., at ¶ 22.

In addition to the major production on November 8, 2019, Optrics, via Heuristica, provided numerous supplemental document productions.  *Ibid*.  Whenever BNI raised concerns about potentially missing documents, Optrics met and conferred with BNI in good faith and made every effort to comply with its obligations by having Heuristica produce the requested documents if the documents existed. *Ibid.*

Optrics was finally confident that it was meetings its discovery obligations, as only a month after receiving the November 8, 2019 document production, BNI stated in its December 9, 2019 CMC Statement that it had all of the documents it needed for trial:

> Despite Optrics' delay tactics, ***once it completes its single Rule 30(b)(6) deposition of Optrics on damages, BNI is ready to go to trial***. The litigants are not strangers. … Other than internal communications, communications with third parties and financials, the parties already have all the documents between them in their possession.

(Dkt. No. 150, p. 12:4-8).  The only other evidence BNI said it needed was a Rule 30(b)(6) deposition related to Optrics' damages claims – an issue no longer relevant because Optrics had since dismissed its SAC.  (Dkt. No. 226).

### 8.    Additional Failure By Terreri Law

As the case continued, Terreri Law failed Optrics in other ways beyond e-discovery.  By way of example:

- Terreri Law waited until September 10, 2019 – ***more than two years after filing suit*** and only six weeks before the initial fact discovery cutoff – before serving written discovery requests on BNI.  (Dkt. No. 167).

- Terreri Law waited until October 2019 before serving deposition requests/subpoenas.  Terreri Law failed to properly serve most of these subpoenas.  *Id*.

- Terreri Law failed to file declarations supporting motions to file Optrics' documents under seal, resulting in the court unsealing these documents.  (Dkt. No. 145).

- Terreri Law failed to invoke the provisions of FRCP 26(b) or the stipulated protective order to claw back inadvertently produced privileged documents.  (Dkt. No. 254 at p. 2:1-3).

- Terreri Law failed to obtain any meaningful discovery production from BNI.

- Terreri Law took only one deposition.  Hamill Decl., at ¶ 6.

### 9.  Ultimately, Terreri Law Failed to Produce a Privilege Log or Manage Completion of Optrics' Document Productions

Approximately four months after Optrics provided its bulk electronic data to Heuristica pursuant to ESI Attorneys' instructions, and with the February 6, 2020 discovery hearing just a week away, Mr. Terreri contacted Optrics to discuss the progress being made by Terreri Law and ESI Attorneys on the privilege log.  Ostergaard Decl., at ¶ 23.  According to Mr. Terreri, the list of communications that Heuristica held back based on privilege was large, and he wanted to make sure that Optrics had correctly listed all of the relevant attorneys and law firms subject to privilege exclusion.  *Ibid.*  Optrics reviewed the exclusion list and confirmed to Mr. Terreri's satisfaction that it was correct.  *Ibid.*

Mr. Terreri, however, never produced the privilege log.  *Id.*, at ¶ 24.  At the February 6, 2020 hearing, Mr. Terreri incorrectly stated that it was Heuristica's job to create the privilege log and said that he could not access the documents for review.  *Id.*, at ¶ 25, Exh. A (March 9, 2020 letter).  The truth was, that it was Mr. Terreri's and ESI Attorneys' responsibility to create the privilege log, while Heuristica's responsibility after having produced the data was only to host the source working file for review of all potentially privileged documents.  *Ibid.*

As a result of Mr. Terreri's failures, Judge Hixson authorized BNI to move for sanctions and did not mince words in describing Mr. Terreri's lack of compliance with court orders:

> I reject your interpretation of the order. This order does not say review documents for privilege whenever you feel like it and take as long as you want to and then after you've done that, serve a privilege log. It says review the documents, decide which ones are privileged and serve that log by October 15th. So I don't think you're allowed to say we didn't make the deadline because we simply didn't undertake any of the effort that was required to identify what was privileged. That's not a legitimate response, Mr. Terreri. (Dkt. No. 235-1 at p. 6).

And even with the expertise of ESI Attorneys and Heuristica placed at his disposal, Mr. Terreri never certified that Optrics' document production was complete. Judge Hixson was unimpressed with Mr. Terreri's attempts to deflect responsibility for his client's document production obligations:

> And I don't want to unnecessarily berate people, but, unfortunately, I feel like it is necessary. Mr. Terreri, this is a terrible situation that your client is in, that you are in as the counsel representing the client, that you are in defiance of court orders and haven't done even the most basic document production and are here at this hearing unable to speak intelligently really to anything about the status of the document production. Your client is in a precarious position because of that non-compliance with discovery orders, and I don't get it. This was just a massive dereliction of duty on Optrics' part, and it's unacceptable. (Dkt. No. 235-1 at p. 15-16).

When Optrics read Judge Hixson's February 7th order, it was shocked to discover that Judge Hixson had been misled into believing (i) that Heuristica was responsible for creating the privilege log, and (ii) that Optrics had delayed in providing the necessary documents to Heuristica. Ostergaard Decl., at ¶ 24. In Optrics' view, by providing all of the necessary documents to Heuristica four months prior, whom then produced the necessary documents by November 8, 2019, Terreri Law and ESI Attorneys had more than enough time to complete the document productions and the privilege log. *Ibid*.

Heuristica also took issue with Mr. Terreri's conduct. On March 9, 2020, Heuristica's outside counsel sent a letter accusing Mr. Terreri of making serious misrepresentations to the Court, including that: (i) Heuristica was responsible for reviewing documents and creating the privilege log, (ii) Mr. Terreri did not have access to Optrics' produced documents, which in fact were available to Terreri Law on the Relativity One production platform, and (iii) Heuristica did not provide a list of the inadvertently produced documents to Mr. Terreri for issuance of a clawback notice. *Id*., at ¶ 25, Exh. A (March 9, 2020 letter).

### D.    After Judge Hixson's February 7, 2020 Order, Terreri Law Abandoned Ship.

After Judge Hixson authorized BNI to move for sanctions, Mr. Terreri urgently began trying to abandon the case. On February 11, 2020, Mr. Terreri advised Optrics that, in order to minimize expected monetary sanctions, it should dismiss its SAC in its entirety. *Id.*, at ¶ 27. Optrics was uncomfortable with this advice and resisted dropping all of its causes of action because it still desired to pursue its claims for breach of contract and declaratory relief relating to Optrics' ownership of the

1   CudaMail mark. *Ibid.* Mr. Terreri explained that Optrics could still obtain its desired outcome if it

2   prevailed against BNI's counterclaims but that Optrics needed to drop its entire SAC if it hoped to

3   minimize potential discovery sanctions. *Ibid.* Ultimately, Optrics trusted and followed Mr. Terreri's

4   advice, and that day Mr. Terreri proceeded to agree to a stipulation drafted by BNI to dismiss Optrics'

5   SAC. *Ibid.* However, Mr. Terreri never showed the stipulation to anyone at Optrics and never informed

6   Optrics that he had also agreed to allow BNI to amend its counterclaims against Optrics as part of that

7   stipulation. *Ibid.*

8       Also, on February 11, Mr. Terreri told Optrics that it should terminate his and Ms. Neibaron's

9   representation in the hopes that the Court would stay the lawsuit and postpone any sanctions motion

10  until Optrics found new counsel. *Id.*, at ¶ 28. Optrics again followed Mr. Terreri's advice and

11  terminated his and Ms. Neibaron's representation that same day. *Ibid.*. During these discussions, Mr.

12  Terreri indicated to Optrics that Ms. Katchatourian had threatened to seek sanctions against Mr. Terreri

13  and Ms. Neibaron personally as well as against Optrics. *Id.*, at ¶¶ 26, 28.

14      Mr. Terreri never showed Optrics his stipulation with BNI or disclosed or discussed all of its

15  terms with Optrics. *Id.*, at ¶ 27. Instead, Optrics understood that it was only withdrawing its SAC. *Ibid.*

16      Throughout its representation, Optrics had always endeavored to remain current on its attorneys'

17  fees as invoiced including over $427,000 paid to Mr. Terreri; over $121,000 paid to Ms. Neibaron,

18  $92,000 invoiced by Heuristica and a further disbursed $80,000, and approximately $40,000 to

19  Canadian counsel, all in USD. *Id.*, at ¶ 29.

20  **IV.    ARGUMENT**

21      **A.    Terreri Law Is The Responsible Party For Each and Every One Of BNI's**

22              **Allegations of Deficiency.**

23      BNI's allegations (having the client involved in document collection, failing to produce a

24  privilege log, failing to certify the completion of documents, failing to understand what documents had

25  been produced, etc.) all implicate Terreri Law as the responsible party and not Optrics.

26      Counsel must take responsibility for ensuring that their clients conduct a comprehensive and

27  appropriate document search. Counsel are also responsible for supervising the entire discovery process.

28  *Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*, No. CV 11-04001 RS (KAW), 2013 WL 4511925, at *2

1   (N.D. Cal. Aug. 23, 2013).  Counsel has an obligation to not just request documents of his client, but to

2   identify all sources of relevant information, and become fully familiar with the client's document

3   retention policies, as well as the client's data retention architecture.  *Rhea v. Washington Dep't of Corr.*,

4   No. C10-0254 BHS KLS, 2010 WL 5395009, at *6-7 (W.D. Wash. Dec. 27, 2010).  It is not reasonable

5   for counsel to simply give instructions to his clients and count on them to fulfill their discovery

6   obligations.  *Bruner v. City of Phoenix*, No. CV-18-00664-PHX-DJH, 2020 WL 554387, at *8 (D. Ariz.

7   Feb. 2, 2020).

8          Here, the Court recognized that Mr. Terreri had failed to meet his responsibility as a lawyer on

9   document production, and that Mr. Terreri's failures were "a massive dereliction of duty" that put

10  Optrics in a "precarious position."  The Court singled out Mr. Terreri as being in violation of multiple

11  court orders and upsettingly noted that Mr. Terreri was "unable to speak intelligently really to anything

12  about the status of the document production."

13         Aside from e-discovery procedures, which as a matter of law were Terreri Law's responsibility,

14  BNI alleges that on the day before the close of discovery Optrics "dismissed its Complaint, cancelled its

15  upcoming depositions, and fired its attorneys without substitute counsel."  While true, this statement by

16  BNI is completely disingenuous.  Not only were those actions not the subject of the authorization for

17  BNI to move for sanctions, but they were the exact results orchestrated and desired by BNI.  Having

18  witnessed Mr. Terreri's dereliction of duty and subsequent beratement by the Court, BNI exploited the

19  looming threat of personal sanctions by negotiating a one-sided stipulation against Optrics while Mr.

20  Terreri was on his heels.  BNI understood that this strategy and negotiation created a conflict of interest

21  between Optrics and Terreri Law but proceeded nonetheless.  *See e.g. Crawford v. Katz*, 32 A.3d 418,

22  435 (D.C. App. 2011) *citing Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 623 (2d Cir. 1991) (noting that

23  a potential conflict of interest is inherent when a party seeking sanctions against a client and lawyer

24  jointly).  Not surprisingly, Terreri Law sought to immediately exit the case.  In his haste to avoid

25  personal sanctions, Mr. Terreri put his own interests before Optrics during his negotiations with BNI and

26  sought to appease BNI at the expense of representing Optrics' best interests.

27         At no point did Mr. Terreri disclose this conflict of interest to Optrics.  *See* Cal. Rules Prof.

28  Conduct, Rule 1.7(b); *see also* State Bar of California Formal Opinion No. 1997-151 at Section (I)(B)

1   (recognizing that where the lawyer and client take contrary positions in response to a motion for

2   sanctions against lawyer and client jointly, lawyer must make written disclosure of conflict pursuant to

3   Rule 3-310(B)(4) of the California Rules of Professional Conduct).  Indeed, during this time Optrics had

4   only just become aware that Mr. Terreri had taken the conflicting position to the Court that his failures

5   in discovery were the fault of Optrics and Heuristica, and not his own.  Faced with personal sanctions,

6   Mr. Terreri gave BNI everything it wanted, without obtaining anything in return for Optrics – deepening

7   his conflict of interest with Optrics.  He negotiated a stipulation by whereby Optrics dropped its entire

8   SAC, cancelled all of its scheduled depositions and gave up its right to defend itself; meanwhile,

9   granting BNI the right to seek sanctions, amend its counter complaint and become the prevailing party.

10   All this occurred because Optrics trustingly obliged to Mr. Terreri's legal advice, as it had done

11   throughout the litigation.

> **B.**     **Terminating and Preclusionary Sanctions Are Not Warranted.**

12

13   As a practical matter, BNI is not at all clear about what claims or issues support its request for

14   terminating and/or preclusionary sanctions.  As discussed above, through the infamous February 11th

15   stipulation between BNI and Mr. Terreri, Optrics has already dismissed its SAC, to BNI's substantial

16   benefit.   Even setting aside the fact that Optrics is not at fault apart from Terreri Law's actions, BNI

17   cannot establish the requirements for terminating and/or preclusionary sanctions as a general matter.

18   Indeed, BNI has stated that it already received the evidence it needs to go to trial.  BNI

19   previously asserted to the Court as early as December 9, 2019 that it is ready for trial.  (Dkt. No. 150 at

20   13:5).  BNI therefore has not established a loss to justify terminating and/or preclusionary sanctions, and

21   in fact by repeatedly stating that it is ready for trial, is stated that it has in fact suffered no real loss at all.

22   BNI can therefore be made whole for any noncompliance with discovery orders through a limited

23   monetary sanction.

> **1.**     **Terminating Sanctions Are Not Apropperiate Here.**

24

25   In deciding whether terminating sanctions for discovery violations are appropriate, a court must

26   weigh five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to

27   manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition

28   of cases on their merits; and (5) the availability of less drastic sanctions."  *Malone v. U.S. Postal*

*Service*, 833 F.2d 128, 130 (9th Cir. 1987) (citations omitted).  "Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive."  *Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).  After weighing these factors, the Court must then consider whether the "**party's** behavior … demonstrated willfulness, bad faith, or fault."  *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994) (emphasis added).

a)      **Third Factor: Any Alleged Noncompliance With Discovery Orders is Not Tied to any of BNI's Remaining Counterclaims**

In analyzing the prejudice to the moving party, the Court must "examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case."  *Malone*, 833 F.2d at 131.  The sanction "must be specifically related to the particular claim which was at issue in the order to provide discovery."  *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983).  In contrast, if noncompliance with a discovery order merely results in "increased costs and fees" and the moving party is "ready to go to trial," then the harm can be "remedied by an award of monetary sanctions."  *Rubin v. Belo Broadcasting Corp.,* 769 F.2d 611, 618 (9th Cir. 1985).

BNI has already represented to the Court that it is "ready to go to trial," and thus the accused's conduct could not have impaired BNI's ability to go to trial, and any harm BNI suffered can therefore be remedied by an award of monetary sanctions.

Further, BNI's allegations of insufficient document collection and production are either incorrect or unrelated to the counterclaims at issue in the case:

- The lack of a hold notice in 2013 is irrelevant to the only substantive issue raised by BNI's counterclaims – whether the November 2016 Optrics-EMC transaction triggered Section 14.13 of the 2013 Reseller Agreement – because discussions leading to that transaction did not commence until August of 2016.  Further, Optrics was unaware of the potential for litigation until it received BNI's Breach of Contract Letter of January 23, 2017.  Additionally, it is Optrics' company policy for employees to not delete any work-related emails, period.  Hamill Decl. Exh. B at 15:24-16:9 [B. Zingle Deposition Tr.].  As a result, emails going back at least as far as 2004 are stored in Optrics' backup system.  *Id.* at 20:3-16.

- BNI's allegation that Optrics' searched only the filenames and not the contents of its electronic files in its search for responsive documents is untrue. In Optrics' document collection guided by ESI Attorneys and Heuristica, Optrics provided its electronic files for

Heuristica to search using industry standard methodologies and software.  File contents were searched.

- BNI alleges that Optrics did not use wildcards in its search terms, but provided only a single example: @barracuda.com instead of *barracuda*.  Not only is this allegation irrelevant to the issue of ownership of the CudaMail IP, but Optrics already alleviated BNI's outstanding concerns during its subsequent document productions via Heurstica.  Further, BNI failed to establish that Optrics' search methodology in its initial document production was defective, as Optrics actually included several permutations of "barracuda" in its search terms. (Dkt. No. 236-2 at p. 20 [Optrics' search terms]).  Further, all searches of Optrics' email backup system automatically used wildcards.  Hamill Decl. Exh. B at 38:24-39:5 [B. Zingle Deposition Tr.].

- BNI attempts to mislead the Court by claiming that Optrics did not include the name of BNI employee Sophia Valentin in its initial search term list when in fact Sophia Valentim's name <u>does</u> appear in its subsequent search term list run by Heuristica.  (Dkt. No. 236-2 at p. 19).

BNI's allegations are in stark contrast to cases where terminating sanctions were issued because specific, relevant documents were withheld or false testimony on a crucial issue was given.  *See e.g., Wyle*, 709 F.2d at 591 ("monetary sanctions would be insufficient because [defendant] withheld 'the essential evidence needed to establish the true extent of its rebating.'"); *Conn. Gen. Life Ins. Co., v. New Images of Beverly Hills*, 482 F.3d 1091, 1095 (9th Cir. 2007) ("[Defendants] hid the identities and locations of former employees … preventing the [plaintiffs] from finding employees who could testify[.]"); *Valley Engineers Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998) ("There was plenty of evidence that [Defendant], not just its lawyers, was doing its best to hide the memorandum[.]").

Further, the documents relevant to the issue of ownership of the CudaMail IP under Section 14.13 of the 2013 Reseller Agreement – those relating to the Optrics-EMC transaction – have been produced not only by Optrics, but also produced independent of Optrics and Terreri Law by EMC's parent company j2.  That BNI already has the evidence it needs to try this case on the merits is highlighted by BNI's numerous statements to this Court that it is ready for trial:

- ***"[O]nce it completes its single Rule 30(b)(6) deposition of Optrics on damages, BNI is ready to go to trial.***" (Dkt. No. 150 at p. 12:4-5 [Dec. 9, 2019 CMC Statement]).

- "Barracuda suffers prejudice each and every time this case is delayed" (Dkt. No. 261 at p. 3:14 [April 14, 2019 BNI Opposition to Optrics' Motion to Enlarge Time]).

- "The only material issue left in the case is whether Barracuda owns the IP at issue. There is no reason why this case cannot be tried in November[.]"  (Dkt. No. 261 at 3:11-12).

Therefore, this is not a situation where Optrics "will profit from its own failure to provide discovery."  *Wyle*, 709 F.2d at 591.  As in *Rubin*, because BNI has repeatedly asserted it is ready for trial while claiming no impairment or inability to receive a rightful decision of the case, a limited monetary sanction, rather than severe terminating sanctions, is appropriate.  *Rubin*, 769 F.2d at 618.

### b)      Fifth Factor: This is Optrics' First Sanction in this Lawsuit

In analyzing the availability of less drastic sanctions, a Court must take into account whether it has "(1) explicitly discussed the feasibility of less drastic sanctions and explained why alternative sanctions would be inappropriate, (2) implemented alternative sanctions before ordering dismissal, and (3) warned the party of the possibility of dismissal before actually ordering it."  *Hyde & Drath*, 24 F.3d at 1167.  "[I]t is common practice for courts to issue warnings or to make orders of default or dismissal conditional on a party's noncompliance with an outstanding order to compel."  *Rubin*, 769 F.2d at 616.

Here, there have been no prior sanctions against Optrics; nor has the court previously warned Optrics that it would dismiss its pleadings.  More importantly, because BNI has stated that Optrics and j2 have produced sufficient discovery relating to the issue of ownership of the CudaMail trademark and domain that BNI determined it needs for trial, a monetary sanction would suffice to make BNI whole.  Thus, this factor also weighs strongly against imposing terminating sanctions.

### c)      Optrics Did Not Act in Bad Faith

In addition to weighing the above factors, the "court must also determine that the violations of discovery orders were due to the willfulness, bad faith, or fault of ***the party***."  *Hyde & Drath*, 24 F.3d at 1167 (*citing Wyle v. R.J. Reynolds Indus.*, 709 F.2d 585, 589 (9th Cir. 1983)) (emphasis added).  This inquiry examines whether the "disobedient conduct" was under the "control of the litigant" as opposed to the party's counsel.  *Ibid.*  While a finding of bad faith is not a requirement for imposing sanctions, good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust.  *Id.,* at 1171; *see also Community Dental Svcs. v. Tani*, 282 F.3d 1164, 1170 (9th Cir. 2002) (When a case is dismissed due to an attorney's gross negligence "the judicial system loses credibility as well as the appearance of fairness[.]").

Again, it was Optrics' counsel Terreri Law - not Optrics - that was responsible for the alleged violations of discovery orders.  Completing a privilege log and document productions was not under Optrics' control, and Optrics acted in good faith throughout discovery.  Optrics at all times promptly complied with all of Terreri Law's instructions during discovery as they were received.  Optrics' good faith is further evidenced by its retention of Heuristica and ESI Attorneys in 2019 to further assist Terreri Law, resulting in a total of some 500,000-plus documents being produced to BNI by November 8, 2019.  Yet even after incurring over $430,000 USD in responding to BNI's discovery requests, Optrics is left defending itself against Terreri Law's violations of discovery orders.  As such, imposition of terminating sanctions against Optrics would be unjust.

### 2.    Preclusionary Sanctions Are Inappropriate.

The purpose of preclusionary sanctions is to further the following purposes served by Fed. R. Civ. Proc. 37(b) ("Rule 37"): (1) ensure that a party will not profit from its own failure to comply; (2) secure compliance with the particular order at hand; and (3) serve as a general deterrent in the instant case and other litigation, provided the party is at fault.  *U.S. v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365, 1369 (9th Cir. 1980).  "A district court's use of sanctions in order to achieve these objectives is tempered by the requirements of due process."  *Ibid.*  "Thus, neither dismissal nor preclusion of evidence that is tantamount to dismissal may be imposed when the failure to comply with discovery orders is due to circumstances beyond the disobedient party's control."  *Ibid.*  Here, none of the purposes served by Rule 37(b) require preclusionary sanctions.

The cases relied on by BNI involve extreme misconduct distinguishable from the facts in this case and illustrate why preclusionary sanctions are not appropriate against Optrics.  In *Choudhuri v. Wells Fargo Bank, N.A.*, No. 15-CV-03608-VC (KAW), 2017 WL 5598685 (N.D. Cal. Nov. 21, 2017), the plaintiff had filed 17 actions based on the same loan, had "failed to provide any documents other than those previously provided by Defendant," and had responded to interrogatories solely by "copying and pasting of the second amended complaint … with no identification of specific facts, witnesses, or documents."  *Id.* at *8.  In *Sas v. Sawabeh Info. Svcs.*, No. CV114147MMM(MANx), 2015 WL 12711646 (C.D. Cal. Feb. 6, 2015), the the plaintiff failed to produce any documents related to its damages claims until shortly before trial.  *Id.* at *11.  And in *In re Napster Inc. Copyright Litig.*, 462

1  F.Supp.2d 1060 (N.D. Cal. 2006), an officer of one of the defendant venture capital firms sent an email

2  to the firm's employees directing them to "delete all emails" related to the matter.  *Id.* at 1064, 1073.

3          As laid out above, Optrics will not profit from its failure to comply with Judge Hixson's orders.

4  Both Optrics and j2 have independently produced documents relating to the Optrics-EMC transaction

5  and BNI has not asserted any discrepancies between the two productions indicating that documents are

6  missing or have been altered due to the improper actions of one party or the other.  BNI has also stated

7  repeatedly that it has the evidence it needs to go to trial and is in a hurry to try this case.  Thus, a limited

8  monetary sanction will more than suffice to make BNI whole.  *See Cooley v. Leonard*, No. 4:18-CV-

9  00719-YGR(KAW), 2019 WL 6250964 at *4 (N.D. Cal. Nov. 22, 2019) (holding that an adverse

10  inference instruction would be appropriate only if the plaintiff is "unable to obtain these emails from

11  other sources").

12          In addition to being the proper way to make BNI whole in this matter, a limited monetary

13  sanction imposed on Terreri Law is the best way to achieve the goals of Rule 37(b), that of securing

14  compliance with court orders and as serving as a general deterrent.  Terreri Law is the bad actor here.

15  Punishing Optrics and letting Terreri Law off the hook will not serve a deterrent effect.  Optrics at all

16  times acted in good faith to comply with its discovery obligations in this case.  When Optrics realized

17  that Terreri Law was struggling with electronic discovery, Optrics responded by immediately hiring a

18  more robust e-discovery vendor, Heuristica, and one month later a specialist e-discovery law firm, ESI

19  Attorneys.  Both of these firms were retained by Optrics expressly to help Mr. Terreri successfully move

20  discovery forward and to comply with Optrics' discovery obligations to BNI.  The non-compliance with

21  discovery orders in this case falls squarely on Terreri Law's shoulders and punishing Optrics will not

22  accomplish a just result.

23          **C.**     **Any Monetary Sanctions Should Be Levied Against Terreri Law Alone.**

24          Rule 37 sanctions must be applied diligently both "to penalize those whose conduct may be

25  deemed to warrant such a sanction" [and] to deter those who might be tempted to such conduct in the

26  absence of such a deterrent."  *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763-64 (U.S. 1980).  This

27  includes imposing monetary sanctions against only the attorney (and not the party) for violation of

28  discovery orders.  *See Sali v. Corona Regional Medical Center*, 884 F.3d 1218, 1225 (9th Cir. 2018)

1  (affirming imposition of monetary sanctions on only the attorney pursuant to Rule 37(b) for violating a

2  court order to produce the client's expert witness for deposition); *Lee v. Walters*, 172 F.R.D. 421, 436

3  (D. Or. 1997) (imposing monetary sanctions on only the attorney under Rule 37(b) for violating multiple

4  orders to produce discovery and complete depositions).

5          Likewise, the Court has the inherent authority to impose monetary sanctions on an attorney and

6  not the party when it is the attorney who is at fault for violation of court orders.  *Roadway Exp., Inc.*,

7  447 U.S. at 765 ("federal courts have inherent power to assess attorney's fees against counsel"); *MAI*

8  *Systems Corp. v. Walbert Enterprises, Inc.*, 116 F.3d 485, 1997 WL 312595, at *2 (9th Cir. 1997)

9  (affirming imposition of monetary sanctions pursuant to the court's inherent authority on a party's

10 attorneys for refusing to dismiss a complaint).

11         Here Bert Terreri and Grace Neibaron, officers of the court, and not Optrics, are the parties at

12 fault.  Their dereliction of duty has left Optrics in a "precarious position."  The proper and practical

13 solution is to levy personal sanctions against Terreri Law, in an amount deemed reasonable under all the

14 circumstances so that BNI's loss may be reimbursed in whole or in part.  All other possible actions are

15 unsatisfactory.

16         **D.      BNI Overreaches on Its Claims For $450,000 in Fees/Costs While Failing to Show**

17                 **Causation.**

18         A court, when using its inherent sanctioning authority, must establish a causal link between the

19 Litigant's misbehavior and legal fees paid by the opposing party.  *Goodyear Tire & Rubber Co. v.*

20 *Haeger*, 137 S.Ct. 1178, 1186 (2017).  The Supreme Court has framed this kind of causal connection is

21 as a but-for test:  The complaining party may recover "only the portion of his fees that he would not

22 have paid ***but for***" the misconduct."  *Id.* at 1187.  Consistent with the Supreme Court's directive, Civil

23 Local Rule 37-4 requires that a party requesting attorneys or costs "itemize with particularity the

24 otherwise unnecessary expenses, including attorney fees, ***directly caused*** by the alleged violation or

25 breach."  Civil L.R. 37-4.

26         BNI's claim for attorneys' fees and costs in the amount of $450,000+ includes much

27 overreaching.  Although BNI makes repeated references to the Court ordering a sanctions motion, it

28 conveniently omits defining the actual scope of the Order.  Despite the Court being frustrated, as it had a

---

right to be, the Court did ***not*** order sanctions on anything and everything and suggest that BNI could recover all of its claimed discovery costs of $400,000+.  Instead, after the letter-brief procedure had been exhausted, Judge Hixson[2] ordered sanctions only for violations of paragraphs 2 and 3 of Judge Laporte's Septermber 17, 2019 Order (Dkt. No. 114), which required Optrics to (1) produce a privilege log, and (2) serve a declaration explaining what steps were taken to locate responsive documents and why any responsive documents do not exist:

> With respect to ECF No. 114, Optrics is in violation of paragraph 2. Optrics was supposed to serve a privilege log by October 15, 2019 "absent compelling circumstances demonstrated by a declaration(s) under penalty of perjury after meeting and conferring regarding any limited and necessary extension." As of today, Optrics has still not served the log […] This Court's Discovery Standing Order states that "[n]o motion for sanctions may be filed until after the moving party has complied with the requirements above," concerning discovery letter briefs. … Barracuda has exhausted the discovery letter brief procedure and may now proceed to move for sanctions. (Dkt. No. 219).

> Paragraph 3 of ECF No. 114 required Optrics to serve a declaration within one week of substantially completing various items of document production explaining what steps were taken to locate responsive documents and why any responsive documents do not exist. Because Optrics does not know if it has substantially completed any of those productions, it has not served the required declarations, utterly defeating the purpose of paragraph 3 of the order. Under the Court's Discovery Standing Order, Barracuda may now move for sanctions. *Id.*

The Court's order is clearly and intentionally restrictive.  If BNI wanted to include any sanctionable actions in this motion beyond Optrics' failure to certify it had completed its production and failure to provide a privilege log, it had to as per Judge Hixson's February 7, 2020 order, separately show that such actions were indeed sanctionable.  BNI has not done so.  Nonetheless, BNI has overreached and lumps in many categories of fees/costs in conclusory fashion without any established relationship to the scope of Judge Hixson's Order.  These costs being claimed are otherwise ordinary litigation costs that BNI would otherwise incur in discovery disputes.  And even for those broad

---

[2] BNI's characterization of Judge Laporte's October 7 Discovery Order (Dkt. No. 117) as an authorization for BNI to move for sanctions is incorrect and misleading. In the October 7 Discovery Order, Judge Laporte only ordered that both sides must meet-and-confer and submit a joint discovery letter. She stated if the dispute was still not resolved after those meet and confer efforts, then BNI could move for sanctions. Judge Laporte subsequently retired before ruling further on this issue.

categories of fees/costs that argument might tie to Terreri Law's failure to produce a privilege log and/or certify the completion of document production, BNI fails to provide the required itemization to show that the fees and costs being claimed were a necessary "but-for" consequence.

We address each of the "categories" of fees/costs alleged in the Declaration of Ms. Khachatourian:

**"(1) analyzed Optrics' productions to identify missing categories of documents and formatting issues such as missing metadata and missing email attachments" [ $53,304.88]**

BNI's category 1 lists normal discovery activities that all parties engage in.  Although additional work that was not otherwise necessary might be recoverable with specific documentation, BNI made no such attempt to identify these as valid sanctionable costs.  Instead it appears to have totaled all of its discovery review costs together in one lump sum and sent them in.   As such, BNI has not sufficiently demonstrated that these claimed costs are sanctionable costs under the Court's Order.

**"(2) drafting discovery letter briefs and court-ordered discovery status updates regarding Optrics' incomplete discovery responses and violations of court orders as well as related motions to seal due to Optrics' rejected confidentiality designations;" [$42,447.32]**

BNI has made no attempt to show what specific discovery letter briefs and court-ordered discovery status updates might relate to sanctionable conduct.  BNI again appears to have intentionally lumped all discovery letter briefs together into one total claimed sum.  This is not reasonable.  There are numerous good-faith disputes within this litigation that are clearly unrelated to what Judge Hixson deemed sanctionable.  Further, "Motions to seal due to Optrics' rejected confidentiality designations" is vague and would have likely been avoided had BNI complied with Local Rule 7-11(a) and met and conferred with Optrics prior to filing its motions to file under seal.  Nevertheless, the parties are allowed to have good faith disputes about confidentiality and work them out.  BNI has not demonstrated that any of the claimed costs for drafting discovery letter briefs and court-ordered discovery updates are sanctionable costs under the Court's Order.

**"(3) preparation and attendance at numerous court hearings regarding Optrics' incomplete discovery responses and violations of court orders;" [$12,908.16]**

Again, BNI has not provided any meaningful details, including which hearings, which issues, which attorneys, and which tasks are now being claimed as sanctionable costs.  BNI is not entitled to sanctions on every discovery dispute.  The majority of disputes were certainly not sanctionable and once

again BNI attempts to recover an entire cost category through another shotgun claim that it hopes it can slide through.   As such, BNI has not sufficiently demonstrated that these claimed costs are sanctionable costs under the Court's Order.

**"(4) preparing for and taking two court-ordered Rule 30(b)(6) depositions of Optrics regarding its incomplete discovery responses and insufficient document collection efforts as well as a deposition of Optrics' former ediscovery vendor CloudNine regarding Optrics' insufficient document collection efforts;" [$46,849.42]**

Again, BNI fails to identify the Rule 30(b)(6) depositions being referenced or to itemize the costs being claimed.  If BNI is referring to the Rule 30(b)(6) depositions relating to Optrics' document collection efforts that occurred on September 27, 2019, these depositions are very common in commercial litigation and were a normal part of discovery.  Additionally, BNI had three timekeepers – two lawyers (Ms. Khachatourian and Mr. Woloszczuk) and an e-discovery consultant (Mr. Cheng) – present at each of these depositions, despite the fact that only one of them was asking the witness questions.  Optrics should not have to pay for BNI's flagrant overbilling on the case.  These depositions also fall well outside of the categories of sanctionable costs granted by Judge Hixson's Order of February 7, 2020.

BNI's additional deposition of Cloud Nine was unnecessary.  Again, Cloud Nine's participation occurred early on in the discovery process before it was acknowledged by all parties that Optrics had retained Heuristica in order to address the production deficiencies claimed by BNI.  Further document collection, processing (including duplication of prior Cloud Nine productions), and production was all done by Heuristica in order to address BNI's stated concerns.  BNI's deposition of Cloud Nine appears to have been motivated more out of vindictiveness than any need to obtain certainty about document production, as this deposition occurred on February 11, 2020 - a full two months after BNI had already stated to the Court on December 9, 2019 that it was ready to go to trial.  (Dkt. No. 150, 13:5).  Furthermore, the deposition of Cloud Nine again falls outside the categories of sanctionable costs granted by Judge Hixson's Order of February 7, 2020 and should not be granted.

As such, BNI has not sufficiently demonstrated that these claimed costs are sanctionable costs under the Court's Order.

**"(5) drafting a response to Optrics' request for letters rogatory which Magistrate Judge Hixson denied as "unnecessary" as a condition for Optrics to produce documents in its possession (ECF 136)" [$11,793.13]**

Neither Judge Hixson nor Judge Laporte ever suggested that sanctions were appropriate concerning Letters Rogatory, and neither does BNI in this claim, but BNI includes them nonetheless. Judge Laporte's Order requested input on "the governing legal authority, including substantive Canadian law, regarding the issuance of Letters Rogatory to Canadian courts." This information was supplied to the Court by Jim Swanson's declaration of August 23, 2019 (Dkt. No. 106-1), and Judge Hixson provided a detailed factor-by-factor analysis. This was a good faith dispute that is part of ordinary litigation and therefore outside of sanctionable costs. [3] Heuristica also produced all of the documents affected by Judge Hixson's Order by November 8, 2019. As such, BNI has not sufficiently demonstrated that these claimed costs are sanctionable costs under the Court's Order.

**"(6) opposing Optrics' December 2019 motion to modify the case schedule (ECF 154, 167);" [$8,447.50]**

Terreri Law had sought an extension in part because of the tragic 2019 wildfires and power grid shutdowns that affected the Terreri offices and the homes of its employees in Sonoma County. Most importantly, Terreri Law won this administrative motion. Again, BNI is throwing its entire set of legal costs at Optrics through its motion for sanctions to see what the Court will allow to stick to the wall. As such, these claimed costs are clearly not sanctionable costs under the Court's Order.

**"(7) moving to quash Optrics' deposition subpoenas to Barracuda's lead trial counsel and to Barracuda's owner, Thoma Bravo LLC;" [$22,699.88]**

Once again, BNI has not made any attempt to show why Optrics' position was sanctionable. This claim also falls outside the defined scope of sanctionable costs granted by Judge Hixson's Order of February 7, 2020.

**"(8) obtaining discovery from non-party j2 Global, Inc., including discovery that Optrics should have produced but was unable to, due to Optrics' improper search, data loss, and metadata corruption (to obtain the discovery from contentious and interested party j2 Global, Barracuda had to file a motion to compel in the Central District of California (Civil Action 19-mc-00146-PSG (PJWx)) and also had to oppose j2's motion for reconsideration and ex parte proceedings);" [$147,092.99]**

---

[3] Concerns regarding compliance with a foreign country's privacy laws in U.S. litigation are not frivolous. For example, in *Pearlstein v. BlackBerry Limited*, 332 F.R.D. 117, 122 (S.D.N.Y. 2019), the court denied a motion to compel disclosure of a witness's personal information because the disclosure would have violated the European Union's General Data Protection Regulation (GDPR).

1    With respect to the subpoena to j2, BNI served it on March 19, 2019 - two days before it served

2    its first set of Requests For Production on Optrics.  BNI's actions demonstrate that it was going to

3    pursue the subpoena against j2 regardless of Optrics' actions.  And the timing suggests that BNI

4    considered it a higher priority to pursue discovery from j2 than Optrics.  The timing of the j2 subpoena

5    and the costs incurred and now being sought as sanctions by BNI related to the j2 subpoena, could not

6    possibly have been caused by Optrics' alleged failures in discovery either directly or indirectly.

7    Further, claiming $147,092.99 in costs for a subpoena concerning asset purchase documents is

8    extraordinary.  BNI has made no attempt to show that the scope of its subpoena was related to Optrics'

9    allegedly deficient document production, or that the expenditure wasn't due to its own strategy of

10   opportunistically seeking overbroad document requests from a third-party and direct competitor.

11   Lastly, this claim also falls outside of the defined scope of sanctionable costs authorized by

12   Judge Hixson's Order of February 7, 2020.

13   **"(9) drafting the present motion for sanctions." [$56,064.64]**

14   This amount is unacceptably high considering the conclusory nature of the majority of the

15   allegations, including broadly claimed costs, almost all of which are shown to fall outside of the defined

16   scope of sanctionable costs authorized by Judge Hixson's Order of February 7, 2020.  Even at lead

17   counsel's rate of $600/hr, the total claim for this category is almost 100 billable hours, which included

18   hours unreasonably spent attempting to claim additional sanctions costs that are clearly not claimable

19   costs under Judge Hixson's Order of February 7, 2020.

20   **V.    CONCLUSION**

21   Optrics is a party without intentional fault, but one that has already suffered tremendously.

22   Optrics prays that the Court will recognize that Optrics has already suffered enough through no fault of

23   its own.  BNI's alleged sanctions, perhaps more accurately estimated at $25,000, should be levied

24   against Terreri Law if a just and appropriate message is to be sent.  Optrics further prays that justice be

25   served by the Court allowing Optrics' case to continue on to be decided upon its merits and not

26   terminated due to the neglect and improper actions of its former counsel.

27

28

1    Dated:  May 21, 2020                KAO LLP

2                                        /s/ Andrew G. Hamill
                                         Andrew G. Hamill
3                                        Attorney for Plaintiff, Optrics Inc.

1

**CERTIFICATE OF SERVICE**

2     I hereby certify that on May 21, 2020, I electronically filed the foregoing with the Clerk of the

3 Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

4

5                                          /s/ *Andrew G. Hamill*

6                                          Andrew Hamill

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28