1  Herbert L. Terreri, Esq. (SBN 169815)
   bert@terrerilaw.com
2  Grace Neibaron, Esq. (SBN 276128)
   grace@terrerilaw.com
3  **LAW OFFICES OF HERBERT L. TERRERI, APC**
   235 Foss Creek Circle
4  Healdsburg, CA 95448
5  Telephone No.: (707) 431-1933
   Facsimile No.: (707) 431-2769
6

7  **Former Attorneys for Plaintiff OPTRICS INC.**

8                    **UNITED STATES DISTRICT COURT**
9                  **NORTHERN DISTRICT OF CALIFORNIA**
                     **SAN FRANCISCO DIVISION**
10

11 OPTRICS INC,                          **CASE NO.: 3:17-cv-04977-RS**

12         Plaintiff,

13     v.                                **HERBERT L. TERRERI'S OPPOSITION TO**
                                         **DEFENDANT BARRACUDA NETWORKS,**
                                         **INC.'S NOTICE OF MOTION AND MOTION**
14 BARRACUDA NETWORKS, INC., a           **FOR SANCTIONS, MEMORANDUM OF**
   Delaware Corporation,  and DOES 1 through **POINTS AND AUTHORITIES (DI 232-3, 234)**
15 10, inclusive,

16         Defendants.                    Date:   June 18, 2020
                                         Time:   10:00 a.m.
17                                        Dept.:  Courtroom G – 15th Floor
                                         Judge:  Hon. Magistrate Thomas S. Hixson
18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2    I. INTRODUCTION ........................................................................................ 1

3
   II.  THE RULES OF PROFESSIONAL RESPONSIBILITY PROHIBIT FORMER
4    COUNSEL FROM REVEALING CLIENT CONFIDENCES ..........................................1

5    III.  FACTUAL BACKGROUND ..........................................................................8

6    IV.  LEGAL STANDARDS AND APPLICATION ...................................................11

7    IV.  CONCLUSION.................................................................................... 13

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

CASES:

3

*People v. Kor* (1954) 129 Cal. App.2d 436, 477 )…...........................................................**4**

4

*Haeger v. Goodyear Tire & Rubber Co*. (9th Cir. 2016) 813 F.3d 1233, 1246 .........................**11**
*Primus Auto. Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 648 (9th Cir.1997)  .......................**11**

5

*Leon v. IDX Sys. Corp.,* 464 F.3d 951, 961 (9th Cir.2006).........................................**11,12**
*Chambers v. NASCO, Inc*. 501 U.S. 32.....................................................................**12**

6

*David v Hooker, Ltd.* 560 F.2d 412 (9th Circuit 1977)…...................................................**13**

STATUTES:

7

8

*Business & Professions Code* section 6068 ................................................................**1**
*Business & Professions Code*, section 6068, subdivision (e) .............................................**3**

9

*Business & Professions Code* section 6068, subsections (b), (c), and (d) ......................…....**4**

10

11

OTHER SOURCES:

12

Cal. State Bar, *Formal Opinion No. 1997-151*  ...................................................….....**2**

13

*ABA Code of Prof. Responsibility*, EC 4-6 ................................................................**3**
*Rules Prof. Conduct*, rule 3.3 .............................................................................**4**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
HERBERT L.
TERRERI, A
PROFESSIONAL
CORPORATION

*Opposition to Motion for Sanctions*          *Case No. 3:17-cv-04977-RS*          iii

1

2

3

4

# I.  INTRODUCTION

Attorney, Herbert L. Terreri, (hereinafter referred to simply as Terreri) hereby files this opposition to the Motion for Sanctions independent of the opposition filed by the Plaintiff.  Plaintiff is now represented by KAO, LLP, Chris Kao, attorney.

5

6

7

8

9

10

11

Terreri, as the former attorney for the plaintiff, the information obtained during the representation, including information learned from experts, ESI consultants, and others during the course of my representation are not disclosable without client consent.  Terreri does not have that client consent, and is prohibited from addressing many of the issues relating to the allegations against Plaintiff and counsel which jointly form the basis for sanctions where it would require the disclosure of confidential information of the client.  These ethical obligations make it difficult to respond to many of the allegations as they may be charged against counsel.

12

13

14

Should the former client, Optrics, file an Opposition which permits or requires a response from Terreri, then Terreri seeks leave of the court to supplement its Opposition in the form of a reply brief.

15

16

17

## II.  THE RULES OF PROFESSIONAL RESPONSIBILITY PROHIBIT FORMER COUNSEL FROM REVEALING CLIENT CONFIDENCES

18

This pending sanctions motion seeks sanctions against both the prior client, and Terreri.

19

20

21

22

Terreri was discharged and filed a motion to withdraw (ECF 227)which was granted on February 28, 2020.  (ECF 241.) after this Motion was filed.  Optrics has new counsel which will file a brief on behalf of Optrics and Terreri opposes the motion for sanctions against the attorney only within the ethical guidelines.

23

24

*Cal Bus & Prof Code*, § 6068, in pertinent part, provides as follows:

25

26

It is the duty of an attorney to do all of the following:  …
**(e) (1)** To maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.

27

28

*Business & Professions Code* section 6068, subdivision (e), also makes no distinction in regard to whether that information is favorable or not favorable to the client.

*California State Bar, Formal Opinion* No. 1997-151 provides guidance on how an attorney and a client may together or separately oppose a motion for sanctions seeking sanctions against each of them.

> "In the foregoing situations in which Attorney is presenting a different or competing defense, Attorney must protect Client's confidential information in opposing the motion. If Attorney's defense to the motion involves the disclosure of such information and Client does not consent to its disclosure, Attorney cannot disclose the information.
>
> If Attorney insists on exonerating himself from liability for the sanctions and Client does not agree with such an approach, Attorney must withdraw. [fn omitted.]  However, even after withdrawing from the case or his employment is otherwise terminated, Attorney must continue to maintain Client's confidential information, unless Client contends that the request for sanctions is based on conduct for which Attorney is solely responsible, and Attorney disputes this contention. Under such circumstances, Attorney can reveal Client's confidential information to the extent necessary to defend himself against Client's assertions, so long as the information is relevant to an alleged breach of duty arising out of the lawyer-client relationship by Attorney or Client. (Evid. Code, § 958.) Attorney may then reveal Client's confidential information to the extent necessary to defend himself against the client's claim that he was responsible for the sanctions. (See, e.g., *Brockway v. State Bar* (1991) 53 Cal. 3d 51, 63 [278 Cal. Rptr. 836] (Evid. Code, § 958 is not a general client-litigant exception allowing disclosure of any privileged communication simply because it is raised in litigation; it only authorizes disclosure of relevant communications between a client and attorney charged with professional wrong-doing); *Pacific Tel. & Tel. Co. v. Fink* (1956) 141 Cal. App. 2d 332 [296 P. 2d 843] (court denied motion to strike portions of attorney's affidavit under Evid. Code, § 958 or Bus. & Prof. Code, § 6068 (e) when such statements were offered in defense to allegations that attorney entered into stipulation without client's authorization); Los Angeles County Bar Association Formal Opinion Number 396 (citing *Pacific Tel. & Tel. Co. v. Fink*); compare rule 1.6(b)(2) of the American Bar Association, Model Rules of Professional Conduct (lawyer may reveal client's confidential information to extent lawyer believes reasonably necessary to establish a claim or defense on lawyer's behalf in controversy between lawyer and client, to establish defense to criminal or civil claim against lawyer based on conduct involving client, or to respond to allegation in any proceeding concerning lawyer's representation of client.)  (excerpted from Cal. State Bar, *Formal Opinion No. 1997-151*)

Upon the filing of this opposition, Terreri does not yet know whether he is simply filing a "different" or a "competing defense" as contemplated in the Ethics Opinion.  Terreri does intend to be exonerated from the sanctions order, but is prohibited from disclosing a client secret unless the conditions allowing for disclosure are present, which they are not at this time.

In this case, counsel worked through many discovery motions and shared information with

LAW OFFICES OF
HERBERT L.
TERRERI, A
PROFESSIONAL
CORPORATION

*Opposition to Motion for Sanctions*          *Case No. 3:17-cv-04977-RS*          2

the court which was obtained from the clients, consultants, other attorneys and by other means with the client's consent and in the course of representation of the client.  Clearly, upon termination of representation of the client, none of the secrets of the client may be disclosed.  The duty to keep the clients secrets survives the representation. In the Formal Opinion 1981-58, the attorney knew of a report which the client did not want disclosed and the California State Bar issued an opinion regarding whether the attorney could release that report.  The opinion states in part as follows:

> "However, the lawyers should not disclose the report, regardless of whether they withdraw. A fundamental statutory and ethical duty of an attorney is to "maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his client." (Bus. & Prof. Code, 6068, subd. (e).) This stricture is more broad than merely an attorney-client evidentiary privilege. It requires that the relationship between an attorney and client be one of special confidence and trust. The maintenance of the integrity of the legal profession demands at all times the protection of a client who depends upon and confides in the attorney, with the attorney's loyalty being owed to the client. (See Hoffman, *On Learning of a Corporate Client's Crime or Fraud - the Lawyer's Dilemma* (1978) 33 Bus. Law. 1389, 1395.)  ¶¶  Although the information which has been communicated to the attorneys is not a confidential attorney-client communication, it is the client's secret. In addition to the statutory duty to maintain inviolate the secrets of their client, the attorneys here are forbidden to disclose the information in question without their client's consent, unless disclosure is compelled by law. (ABA Code of Prof. Responsibility, DR 4-101(B)(I).) Disclosing the report to third parties would be the revelation of information gained in the professional relationship. The client has requested that the information not be disclosed and it is likely that the disclosure of the information would be detrimental to the client. Since we are aware of no statutory compulsion to disclose this information, the statutory duty to maintain the information in confidence should prevail. This duty persists even if the attorneys are discharged. (*ABA Code of Prof. Responsibility*, EC 4-6.).
>
> The phrase in *Business and Professions Code* section 6068, subdivision (e), "... at every peril to himself to preserve the secrets," is not to be taken lightly. As stated in a concurring opinion in *People v. Kor* (1954) 129 Cal. App.2d 436, 477 [272 P.2d 94]:
>
> > 'Defendant's attorney should have chosen to go to jail and take his chances on release by a higher court. This is not intended as a criticism of the action of the attorney. It is, however, a suggestion to any and all attorneys who may have the misfortune to be confronted by the same or a similar problem.'"  (Excerpted from Cal. State Bar, *Formal Opinion No. 1981-58*)

In this case, Optrics has elected to file their own brief, and counsel must file theirs.  (Decl. Herbert L. Terreri, ¶2.)  Counsel is also bound by the requirements in the the California State Bar

LAW OFFICES OF
HERBERT L.
TERRERI, A
PROFESSIONAL
CORPORATION

*Opposition to Motion for Sanctions*                    *Case No. 3:17-cv-04977-RS*                    3

Rules, including, *Rules Prof. Conduct*, rule 3.3 which provides as follows:

> "(a)   A lawyer shall not:
> (1)   knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
> (2)   fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel, or knowingly misquote to a tribunal the language of a book, statute, decision or other authority; or
> (3)   offer evidence that the lawyer knows to be false.  If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence, and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal, unless disclosure is prohibited by Business and Professions Code section 6068, subdivision (e) and rule 1.6.  A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

Counsel is bound by and remains obligated under *Business & Professions Code* section 6068, subsections (b), (c), and (d), which provide as follows:

> "It is the duty of an attorney to do all of the following:  …
>
> (b) To maintain the respect due to the courts of justice and judicial officers.
> (c) To counsel or maintain those actions, proceedings, or defenses only as appear to him or her legal or just, except the defense of a person charged with a public offense.
> (d) To employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law."

It is Within the constraints set forth above, Terreri provides the following Opposition to the BNI Motion for Sanctions.

BNI accuses Optrics and Terreri of lying to the court, (ECF 234 13 -19), in BNI's Motion for Sanctions, citing to the transcript of the February 6, 2020 hearing before this court, where the court said "counsel cannot speak intelligently really to anything about the status of the document production", but the remainder of the conversation included other information and reflects that, was clearly taken out of context however, BNI repeatedly quotes that statement throughout its brief. The totality of that hearing shows that Terreri was painfully honest, and was careful not to promise or misrepresent what or when Optrics would comply with the orders because he did not know.

LAW OFFICES OF
HERBERT L.
TERRERI, A
PROFESSIONAL
CORPORATION

*Opposition to Motion for Sanctions*                    *Case No. 3:17-cv-04977-RS*                    4

These conversations, while difficult, show that Terreri was not acting willfully or in bad faith in not complying with the Orders. . (Decl. Herbert L. Terreri,¶ ¶ 7, 8, 9).

ECF 224, Filed 02/11/20 10:10 through 11:1reads:

"Let's -- sticking with ECF 114, let's look at paragraph three, which requires certain declarations for documents. Mr. Terreri, what's the status of that?
MR. TERRERI: We are in a similar problem there in that the outside counsel was retained to assist the client in the -- in that work. It was done outside of my office, and I have been unable to get confirmation of exactly how or what has been done on that, and to be able to make the declaration that they have, and so Optrics has been unable to comply with that, and my office has been unable to get the information necessary to present to opposing counsel on that.
THE COURT: I see. With respect to the declarations, I guess in terms of timing, the order itself says that the declaration has to be served within one week of substantially completing the production of each of these categories of responsive documents."

ECF 224, 12:12-19,  reads:

"THE COURT: All right. I don't think we need to talk about paragraph four because that one says that once the Plaintiff's production of documents responsive to the first set is complete, they have to certify that it's complete. But, Mr. Terreri, I believe you're in the position where you can't tell me today whether it is complete, right?
MR. TERRERI: That is correct, your Honor."

In explaining the reason that prior filings had represented that portions of the document production were substantiall y complete, the court expressed its dissatisfaction and stated the quote repeatedly cited by BNI in its briefing.  The entire exchange between Terreri and the court is reproduced here to place the quote in context and as clarified by the court.

ECF 224, 13:12 through 17:17 reads:

"MR. TERRERI: Yes. Thank you, your Honor. I – I will agree that early on that Optrics had represented that it was substantially complete, and in the course of going through this -- the process is why the outside counsel was brought in to deal with and assist with these issues, because it became clear that whether Optrics believed that it was substantially complete or not at the time, it was outside of the technical expertise of what my office could provide, and so we brought in the other experts, and that's what happened at that time. So it's -- it's been a – a difficult process to say the least.
THE COURT: Yeah. And I don't want to unnecessarily berate people, but, unfortunately, I feel like it is necessary. Mr. Terreri, this is a terrible situation that your client is in, that you are in as the counsel representing the client, that you are in

LAW OFFICES OF
HERBERT L.
TERRERI, A
PROFESSIONAL
CORPORATION

*Opposition to Motion for Sanctions*                    *Case No. 3:17-cv-04977-RS*                    5

defiance of court orders and haven't done even the most basic document production and are here at this hearing unable to speak intelligently really to anything about the status of the document production. Your client is in a precarious position because of that non-compliance with discovery orders, and I don't get it. This was just a massive dereliction of duty on Optrics' part, and it's unacceptable.  What exactly the sanction is that it gets happening I can't say right now, but this is just really an awful situation.

MR. TERRERI: Your Honor, let me briefly address that. I -- I do take exception to any conclusion that says we haven't done any meaningful production. The -- the number of documents that have been produced is extremely voluminous. The -- I mean, there's approximately a million pages and over seven or eight hundred thousand documents that have been produced that are all, you know, responsive to the extent that the search terms were what they were, and they had some marginal bearing on the subject matter of the case.

In going through the documents during the production phases, it -- Optrics has provided documents under every one of the categories except where they don't exist and where they have affirmatively stated that. And the -- the reason that we obtained outside counsel wasn't because we were not producing volumes and volumes of documents and that Optrics was not doing its very best. It was that because when faced with some of the technical questions regarding some of these documents, the methodology and so forth being questioned by the defense counsel required the obtaining of specialized counsel on that, and I -- I can't speak to, you know, any of the privileged communications obviously, but I can tell you that I would be very surprised if there were many documents, if any at all, that were not produced. But, again, that's outside of my expertise, and so I'm not saying we're admitting that Optrics had not done anything or has not produced substantial amounts of documents. They have. And in response to that, we've been run around also by defense counsel because, even though they've produced things, they look for a subtle inconsistency, and they draw a conclusion that something horrible must have happened or that Optrics is doing something wrong or somehow or other hiding something. And then after we spend many many hours, if not days tracking down documents and bates numbers and other things, we've been able to show them in multiple instances that they have exactly what they were supposed to have, and they have all of it, and I've just spent an hour on the phone with counsel, Mr. Wang, with Barracuda's counsel going over a series of spreadsheets we had referenced and helping him understand that, in fact, he did have the information he was requesting where they would have thought that we were not complying, and so I -- this -- this has not been a matter of just willfully disregarding or not making any efforts. In the narrow area where the declarations have been required, we have hired appropriate counsel that has now withdrawn that was supposed to have provided that information, and I would have expected it would have been quickly available. My caution in representing -- or not being able to represent to you that it is done is because it's outside of my area of expertise, and it's the reason that extra counsel was brought in, and so I'm being cautious and attempting in the face of these problems with complying with these aspects of the order, of losing further credibility by making a representation that I cannot -- cannot make. And so it's out of caution and respect for the Court and this proceeding that I'm not able to be more specific, but I do want the Court to know that this has been -- Optrics has spent several hundreds of thousands of dollars sorting through and going through this and making sure that documents are

LAW OFFICES OF
HERBERT L.
TERRERI, A
PROFESSIONAL
CORPORATION

*Opposition to Motion for Sanctions*                    Case No. 3:17-cv-04977-RS                    6

1    there, and it is only the lack – or the loss of the expert at this point that I'm unable to
     make those affirmative assertions at this time.

2            THE COURT: Well, I didn't say that Optrics has produced nothing or has
     produced very little, but I was commenting on the fact that Optrics is not in compliance

3    with ECF Number 114, and when it comes to electronic discovery, it's really not good
     enough to say we produced a bunch of stuff. You really should have a document vendor

4    lined up and processes in place so that you're able to describe what was produced, what
     wasn't produced, how did you choose between them, how were things delivered to the

5    document vendor, and then to be 14 days before the close of fact discovery and you
     haven't even produced a privilege log or completed privilege review really is a very

6    sorry state.

7            So, again, I'm not saying Optrics has produced nothing. It's just given the
     standards and best practices that people are expected to follow with respect to

8    electronic discovery, Optrics has followed substantially short of that in addition to just
     being in violation of court orders.

9            But let me move on to ECF Number 180 and just tick through that -- those
     provisions as well."

10

11   Terreri did make misstatements in that hearing without any intent to deceive (Decl. Herbert L.

12   Terreri,¶ 10),  and hereby corrects those statements, as follows:

13       ECF 224, 3:11 reads "… because **I** hired them …" and should be corrected to read "…

14

15   because **Optrics** hired them …"

16       ECF 224, 6:17 reads "… and **we have** retained the outside expert for that …" and should be

17   corrected to read "… and **Optrics has** retained the outside expert for that … "

18       Following the Court making an Order that Optrics principles appear in California for their

19   depositions rejecting Plaintiffs request to conduct them by video, Terreri raised the issue that

20   Optrics may, on the advice of Canadian counsel, not appear for their depositions.  The exchange

21   occurs at the following location in the transcript, but it incorrectly starts  at 48:9 with THE

22   COURT, when it is Mr. Terreri that is speaking.

23

24       ECF 224 48:9 through 50:14, reads:

25           "THE COURT: Okay. And -- all right. I will certainly -- yeah. I mean, thank you, your
             Honor, for considering that.

26               On the -- I received the communication from counsel for Optrics that I have -- I
     have -- I have not resolved yet regarding their travel, and the -- I don't know that it's going to be

27   an issue, but I'm going to just raise it with the Court now, that Canadian counsel has

28

LAW OFFICES OF
HERBERT L.
TERRERI, A
PROFESSIONAL
CORPORATION

*Opposition to Motion for Sanctions*              *Case No. 3:17-cv-04977-RS*              7

1  indicated that they are concerned about allowing either of them to come to California
because of threats of criminal prosecution by Barracuda for the audio recordings.

2  I am -- was hoping to resolve that with Canadian counsel without having to bring
it to anybody's attention, but if that counsel interjects, I may have to bring that back to

3  the Court at some point, but I'm -- I'm hoping that that gets resolved.

4  THE COURT: Okay. Are you not able to defend the depo? Do you need the
Canadian counsel?

5  MR. TERRERI: Oh, I can defend the depo. Canadian counsel is telling me he
doesn't want any of their people from Canada to travel to the U.S. under threat of

6  criminal prosecution by Barracuda. I --

7  MS. KHACHATOURIAN: From --
MR. TERRERI: -- do not -- I -- I guess I -- I'm waiting -- I'm trying to work that

8  out with Canadian counsel so we can resolve their objection.

9  THE COURT: Well, you probably do need to work that out. It would be a little
hard to go to trial if your people can't show up.

10  MS. KHACHATOURIAN: Your Honor --
MR. TERRERI: I concur, your Honor.

11  MS. KHACHATOURIAN: -- I don't really know what this is about. So we are
questioning the recording of Barracuda witnesses. Yes, we are trying to figure out if it

12  was legal. California is a two-party consent state. Canada is a one-party consent state --

13  country. But, I mean, there have been no threats of criminal prosecution, and I'm not a
prosecutor. I have made no complaint to a prosecutor, federal or state. So I don't -- I

14  don't really know where this is coming from. If ultimately that's where we go, that's a
completely separate issue from -- I'm not going to call the cops and have them arrested

15  as they land off the plane if that's what they're concerned about.
THE COURT: Right. I appreciate that.

16  MR. TERRERI: I had hoped to have -- I had hoped that it would be resolved
without ever having to raise it, but given that the Court is making orders and I have

17  been given that communication, I felt that it was my duty to just advise counsel and the
Court that I've been -- I have received a communication from Canadian counsel on that

18  issue that I'm attempting to resolve, and I don't think we need to go any further into it,
but I just felt it was responsible of me that we share that information.

19  THE COURT: Okay. Well, I have received the information. I'm not going to do

20  anything with it at this moment."

21  **III.  FACTUAL BACKGROUND**

22  The responding party in this memorandum, Herbert L. Terreri, outsources eDiscovery and

23  ESI and does not have the resources in his firm to complete the production of documents in house.

24  It was the intention from the beginning to retain a vendor to assist in satisfying electronic discovery

25  obligations.  Following receipt of the initial document discovery from BNI, Terreri hired the firm

26  CloudNine, an experienced eDiscovery vendor to provide assistance in producing the document

27  subject to the ESI protocols agreed to in the case.  The initial document gathering and production

28

LAW OFFICES OF
HERBERT L.
TERRERI, A
PROFESSIONAL
CORPORATION

*Opposition to Motion for Sanctions*                    *Case No. 3:17-cv-04977-RS*                    8

was made by the clients and the documents provided to CloudNine for production and the collection and production was ongoing when the initial discovery Order was issued.  (See Decl. of Herbert L. Terreri, [¶3.]

Following the June June 28, 2019 discovery Order –  ECF 88, the parties continue to meet and confer, which included several joint calls, including July 3, 2019 and July 16, 2019 in which BNI counsel, ESI consultants and CloudNine also participated.  In the days and weeks following the Order (ECF 88) it was determined that CloudNine was not able to work with the Eudora email, and could not provide guidance on how to collect the email and attachments due to the unique manner in which Eudora functioned and saved email.  In these initial calls, BNI and their consultant did not have any advice or suggestions on how to deal with email from Eudora.  It was also during this period of time that the professional obligations of Optrics under APEGA were explained, and on site searching methods providing CloudNine a remote access into Optrics was also discussed in the call with BNI counsel and consultants on July 16, 2019.

Following the The July 11, 2019 Discovery Order – ECF 91  Plaintiffs documents remained with Optrics and not with a US vendor so there was no ability for US counsel and the vendor to review and produce a privilege log, and no documents were being withheld on the basis of privilege.  Counsel for Optrics did not have documents in its possession for review and the issue of confidentiality under APEGA continued.

July 22, 2019 – Joint Status Letter – Optrics advised the court that on July 19, 2019, Canadian Counsel advised US Counsel that searching for documents on the Optrics systems must occur on site with Optrics as the APEGA rules did not allow the data to leave the country of Canada.  (ECF 94 at 6:11-17).

Throughout July and into August Optrics and counsel worked diligently providing documents, with the assistance of CloudNine.  Optrics retained an E-discovery vendor that worked in both the US and Canada but was based in Canada for the purpose of the assisting with the collection, sorting and production in compliance with the court orders and which did not require that the data leave Canada.  This vendor was Heuristica, a law firm in Canada specializing in

LAW OFFICES OF
HERBERT L.
TERRERI, A
PROFESSIONAL
CORPORATION

*Opposition to Motion for Sanctions*                    *Case No. 3:17-cv-04977-RS*                    9

eDiscovery.  Heuristica was retained directly by Optrics and provided support to Terreri.  (Decl. of Herbert L. Terreri, ¶¶4 & 10)

On August 30, 2019, Optrics independently filed a status update (ECF 110) because BNI declined to participate in that update (ECF 110 1:3-5).  At that time, Counsel for Plaintiff reasonably believed and represented to the court that all of the categories were complete but for RFP #13 (ECF  110 at 7:14-16)[1], for which a detailed explanation of the work being done by Heuristica was provided.  (ECF  110 at 1:7-28; 2:1-5).  This update shows that the process which was ongoing by the outside vendor responsible for processing the data.  The lack of specificity of when the data would be ready was because that information was not available at the time of the filing.  US counsel was diligently reporting the work being done to comply.  BNI responded to ECF 110, in ECF 111, and Optrics replied, ECF 112.

In September, the deposition of Optrics 30(b)(6) witnesses regarding discovery was conducted.  Following this deposition, additional US eDiscovery counsel, Kelly Twigger, was retained by Optrics, again directly.  Following that deposition, further letters and updates were filed with the court reflecting the respective positions of the parties and compliance with court orders, and Optrics request for letters rogatory.

Terreri made many efforts to have BNI counsel talk with US eDiscovery counsel, Kelly Twigger, which efforts were repeatedly refused. BNI appears to have been more satisfied with having Optrics under scrutiny and struggling to comply with the Orders of the court than they were with resolving the discovery issues.   These issues were raised in filings ECF 149 5:2-13.  Terreri does not assert that it was BNI's responsibility for Optrics to comply with the court orders, but they did have a duty to work with US counsel in good faith to resolve issues with discovery.

It should have been clear to BNI at that time that Optrics appropriately retained both Heuristica and Kelly Twigger, both experienced in all aspects of eDiscovery to resolve the issues, not to perpetuate them.  The willingness of BNI to directly interact with Optrics eDiscovery counsel was critical to resolving issues relating to the discovery process and compliance with the court

---

[1] See, ECF 224, 13:12 through 17:17, commencing on P. 5 above.

LAW OFFICES OF
HERBERT L.
TERRERI, A
PROFESSIONAL
CORPORATION

*Opposition to Motion for Sanctions*          *Case No. 3:17-cv-04977-RS*          10

orders.  Terreri continued to attempt to meet and confer through this period but was hampered by BNI refusal to cooperate.  See generally, ECF 149.

In October and November of 2019, the precautionary power shut offs and subsequent Sonoma County Wildfires further interfered with the ability of Terreri to complete other deadlines. Here were power shut offs, and attorneys and staff were evacuated from the office and homes during mandatory evacuation orders in Sonoma County.  Due to the power outages and evacuation orders during this time, we were prevented from remotely accessing data and information.  The parties cooperatively extended deadlines to mitigate these disruptions.  (See, ECF  120, 121, 139, 140, 149.  Declaration of Herbert L. Terreri ¶6.)

BNI overstates its claim that BNI was ordered to submit a Motion for Sanctions in J. Laporte's Order ECF 119,  and conspicuously removes the language in the Order which reflects that the court declined to issue an Order to show Cause as requested by BNI and stated as follows, "With regards to Defendant's request that the Court issue an order to show cause, the Court has determined that at this time, if the dispute remains after meet and confer efforts, Defendant is ordered to submit a regularly noticed and briefed motion for sanctions pursuant to Civil Local Rules 7-2, 7-8, and 37-4 with supporting affidavits and/or declarations."  This subtle but important distinction clarifies that the court did not unqualifiedly order BNI to file such an motion at that time as briefed by BNI.

## IV.  LEGAL STANDARDS AND APPLICATION

As set forth above, all aspects of the facts request are only directed to Optrics except the monetary sanctions which are directed to Optrics and counsel.  Terreri will only respond to the request for monetary sanctions.

BNI seeks monetary sanctions against counsel under Rule 37(b)(2)(C) and under the Court's inherent powers.  (ECF 234,  23:16-20)  Under its "inherent powers," a district court may also award sanctions in the form of attorney's fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Primus Auto. Fin. Servs. Inc. v. Batarse,* 115 F.3d 644, 648 (9th Cir. 1997)

LAW OFFICES OF
HERBERT L.
TERRERI, A
PROFESSIONAL
CORPORATION

*Opposition to Motion for Sanctions*          *Case No. 3:17-cv-04977-RS*          11

Before awarding sanctions pursuant to its inherent power, "the court must make an express finding that the sanctioned party's behavior 'constituted or was tantamount to bad faith.'" *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 961 (9th Cir.2006). We have found bad faith in a variety of conduct stemming from "a full range of litigation abuses." *Chambers,* 501 U.S. at 47, 111 S.Ct. 2123. For example "[a] party 'demonstrates bad faith by delaying or disrupting the litigation....' *Primus Auto. Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 648 (9th Cir.1997)." *Leon,* 464 F.3d at 961 (plaintiff demonstrated bad faith by going to extraordinary measures to destroy evidence).

This case is distinguishable from the present case, as Terreri has not acted in bad faith. Terreri acted in good faith throughout the proceeding.  Terreri retained CloudNine, and Optrics retained Heuristica and Kelly Twigger when CloudNine was determined not to be able to deal with all of the tasks required to comply with the discovery obligations. Terreri has not acted in bad faith, vexatiously, wantonly, or for oppressive reasons. The court in  *Leon* states the findings required under the court's inherent powers as follows:

> Under its "inherent powers," a district court may also award sanctions in the form of attorneys' fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (discussing a sanction against an attorney) (citation omitted). Before awarding such sanctions, the court must make an express finding that the sanctioned party's behavior "constituted or was tantamount to bad faith." Id. (citation omitted). A party "demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement  of a court order." Id. at 649 (internal quotation marks and citation omitted). The bad faith requirement ensures that the district court's exercise of its broad power is properly restrained, and "preserves a balance between protecting the court's integrity and encouraging meritorious arguments." Id. Additionally, the amount of monetary sanctions must be "reasonable." Brown v. Baden (In re Yagman), 796 F.2d 1165, 1184 (9th Cir.), as amended by 803 F.2d 1085 (1986) (reviewing a Rule 11 sanction but announcing a standard applicable to other sanctions as well). Leon v. IDX Sys. Corp., 464 F.3d 951, at 961.

Rule 37(b)(2)(C) provides "(C)  Payment of Expenses. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay

LAW OFFICES OF
HERBERT L.
TERRERI, A
PROFESSIONAL
CORPORATION

*Opposition to Motion for Sanctions*          *Case No. 3:17-cv-04977-RS*          12

1    the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was

2    substantially justified or other circumstances make an award of expenses unjust".

3        The case of *David v Hooker, Ltd.* 560 F.2d 412 (9th Circuit 1977) is instructive.  In that case,

4    the party against whom the sanctions were ordered refused to make any effort to comply to a court

5    order to respond to Interrogatories.  The sanctioned party claimed substantial justification due to the

6    failure of an accounting firm to get him necessary documents.  The court reasoned as follows:

7            The defendant did allege at the hearing on the order to show cause that much of the
         problem stemmed from the refusal of the defendant's New York accounting firm to
8        cooperate with the defendant until its bills were paid. However, while that fact, if
         proven, might have excused the failure to completely answer the interrogatories, it
9        could not excuse the non-feasance by the defendant herein. *David* at 419.

10       Here, there is no dispute that compliance with the court orders was dependent upon the

11   retention and completion of work by third party ESI/eDiscovery/attorneys and vendors, and which

12   did result in a very substantial amount of meaningful discovery being produced.

13       Additionally, the categories of work for which the sanctions is requested is overbroad, and

14   much of the work would have been necessary in any event, such as the metadata checking and

15   related tasks.   It appears that counsel has lumped in all proceedings relating to any discovery letter

16   or hearing, which did not all have merit, and which were not all granted by the court.

17                              **IV.  CONCLUSION**

18       Respectfully, counsel requests that this Court to find that there is a lack of basis to find that

19   counsel should be sanctioned and that the totality of the circumstances counsel's actions were

20   substantially justified, or that the award of monetary sanctions would be unjust, and  deny BNI's

21   Motion for Sanctions as to Plaintiff's former counsel of record, Herbert L. Terreri

22                              Respectfully Submitted,

23       Dated: May 21, 2020          The Law Offices of Herbert L. Terreri

24

25                          By:    /s/ Herbert L. Terreri

26                              Herbert L. Terreri, Esq.
                               Former Attorney for Plaintiff and
27                              Counter-Defendant, OPTRICS, INC.

28

LAW OFFICES OF
HERBERT L.
TERRERI, A
PROFESSIONAL
CORPORATION

*Opposition to Motion for Sanctions*          *Case No. 3:17-cv-04977-RS*          13

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on May ___, 2020, I electronically filed the foregoing with the Clerk of

3

the Court using the CM/ECF system, which will send notification of such filing to all counsel of

4

record.

5

6                                        The Law Offices of Herbert L. Terreri

7

8                         By:    /s/ Herbert L. Terreri

9                                Herbert L. Terreri, Esq.

10                               Former Attorney for Plaintiff and
                                 Counter-Defendant, OPTRICS, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
HERBERT L.
TERRERI, A
PROFESSIONAL
CORPORATION

*Opposition to Motion for Sanctions*            *Case No. 3:17-cv-04977-RS*            14