1

2

3

4                   UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7   OPTRICS INC,                          Case No. 17-cv-04977-RS   (TSH)

8              Plaintiff,
                                          **ORDER GRANTING MOTION FOR**
9       v.                                **SANCTIONS**

10  BARRACUDA NETWORKS INC,                Re: Dkt. No. 234

11             Defendant.

12

13       Optrics Inc. filed its complaint against Barracuda Networks Inc. on August 27, 2017 and

14  its Second Amended Complaint ("SAC") on April 26, 2018.  ECF Nos. 1, 51.  Barracuda filed its

15  Answer and Counterclaims to the SAC on July 26, 2018, ECF No. 63, and its Amended

16  Counterclaims ("ACC") on June 16, 2020, ECF No. 307.  It asserted counts for declaration of

17  trademark ownership, declaration of domain name ownership, and breach of contract under the

18  parties' 2013 Reseller Agreement.  After Optrics failed to comply with several discovery orders in

19  this matter, the Court authorized Barracuda to move for sanctions, and it did so.  ECF No. 234.

20  Optrics filed an opposition to the Motion for Sanctions (the "Sanctions Motion"), ECF No. 286, as

21  did Optrics' former counsel, ECF Nos. 288, 289.  Barracuda filed a Reply, ECF No. 297, as did

22  one of Optrics' former counsel, ECF No. 305.  The parties settled their underlying dispute on

23  January 25, 2021, ECF No. 358, but the settlement does not moot the request for monetary

24  sanctions, ECF No. 359.  For the reasons set forth below, the Court **GRANTS** the Motion for

25  Sanctions.

26                           **I.    BACKGROUND**

27       Barracuda is an American company that provides network security products and services

28  for data storage and recovery, content security, and networking application and delivery.  Optrics

United States District Court
Northern District of California

is a Canadian engineering firm specializing in information technology and computer networks. Optrics was a reseller of Barracuda products and services over a thirteen-year period until the relationship was terminated in May 2017.  ACC ¶ 27.  In 2013, Barracuda and Optrics entered into a reseller agreement which, among other things, set forth the terms by which Optrics could purchase various products and support services from Barracuda and resell them to third parties under the banner of Cudamail, an anti-spam filtering service whose core ran on Barracuda hardware and software.  ACC ¶¶ 28-29.  In August 2017, Optrics filed suit against Barracuda, bringing trademark, contract, and other claims stemming from allegedly unfair and deceptive business practices by Barracuda during the parties' thirteen-year business relationship.  After multiple rounds of motions to dismiss, Barracuda answered Optrics' SAC on July 26, 2018, and brought three counterclaims of its own, two for declaratory relief, and one for breach of contract. ECF No. 63.  Months of discovery disputes and discovery violations by Optrics began in June 2019.  On February 11, 2020, with discovery still mired in disputes, the parties stipulated to Optrics dismissing its SAC with prejudice.  ECF No. 225.  Two days later, on February 13, Optrics' counsel, Herbert L. Terreri and Grace R. Neibaron, moved to withdraw after being terminated by Optrics.  ECF No. 227.  Barracuda filed its Sanctions Motion on February 25.  The Court granted the Motion to Withdraw on February 28, ECF No. 241, and granted Barracuda leave to amend its counterclaims on June 11, ECF No. 303.  The core allegation that undergirds the counterclaims is Barracuda's assertion that Optrics sold or licensed, or attempted to sell or license, Barracuda's Cudamail Trademark and Cudamail URL (the "Cudamail IP") to j2 Global, Inc. in violation of the 2013 Reseller Agreement between the parties.

## A.    Optrics' Violations of Court Orders

Optrics' failures to comply with discovery orders and obligations were protracted and plentiful, with the problems going on for over a year.  Barracuda served its first set of document requests on March 21, 2019.  Decl. of B. Ostergaard in Supp. of Optrics' Opp'n to Sanctions Mot. ("Ostergaard Opp'n Decl.") ¶ 13, ECF No. 285-6.  The issues began early on.  Optrics' initial data collection efforts were limited to self-collection by Optrics' partners.  Declaration of Richard Cheng, ECF No. 232-6, ¶ 10.  Only in May 2019 was an e-discovery vendor retained (CloudNine),

United States District Court
Northern District of California

but it did not manage the data collection effort either, which continued to be self-collection. Ostergaard Opp'n Decl. ¶ 13.  Magistrate Judge Elizabeth D. Laporte noted in a June 28, 2019 order that Optrics had failed to join in two discovery letters prepared by Barracuda and did not file anything in response, "seemingly consistent with [a] pattern of agreeing to supplement and/or amend its discovery responses promptly and then missing the deadlines."  ECF 88.  Judge Laporte noted that Optrics had also "belatedly" responded to Barracuda's meet and confer efforts and ordered Optrics to "honor its agreements with [Barracuda] by July 11, 2019."  To the extent it disputed any of the issues Barracuda raised in its discovery letters, Judge Laporte ordered it to meet and confer no later than July 3 and file a "targeted opposition with supporting documentation," but cautioned that Optrics should recognize that it may be deemed to have waived untimely arguments or objections.

On July 11, 2019, Judge Laporte issued another discovery order.  ECF 91.  She noted that on July 9, Optrics had filed a response to Barracuda's discovery letters, but that the response did not comply with her June 28 order because Optrics filed it a day late and failed to provide supporting documentation as directed.  She again noted that Optrics had failed to comply with court and agreed-to deadlines.  She rejected Optrics' proportionality argument in opposition to a specific request for production ("RFP") and warned Optrics that it "may not unilaterally limit its production of documents responsive to this request as it pleases."  Among other things, she ordered Optrics to produce a privilege log and any remaining responsive documents to Barracuda's first set of requests for the production of documents by August 5, 2019.

On July 31, 2019, Optrics requested additional time to complete production, from August 5 to August 13, 2019.  Second Joint Status Update, ECF No. 95.  On August 2, Judge Laporte extended the deadline as requested by Optrics, and directed it to produce a privilege log and all remaining responsive documents to Barracuda's first of requests by August 13.  ECF No. 97.  Optrics requested another extension on August 13, this time until August 31.  ECF No. 100.  On August 15, Judge Laporte granted that extension, but warned, "this shall be [Optric]'s final extension without responding to an order to show cause."  ECF No. 102.  She authorized Barracuda to take a custodian of records deposition of Optrics and ordered Optrics to "certify

United States District Court
Northern District of California

1   under penalty of perjury that its document production is substantially complete by August 30,

2   2019." *Id.*

3          Optrics informed the Court on August 20, 2019 that it was still in the process of retaining

4   an e-discovery firm, the Canadian firm Heuristica.  ECF No. 103.  On August 30, it informed the

5   Court that it had yet to complete production of internal emails relevant to Barracuda's RFP 13.

6   ECF No. 110.

7          On September 17, 2019, Judge Laporte issued a discovery order.  ECF No. 114.  She noted

8   Optrics had not completed production by the August 30 deadline or provided any anticipated date

9   of completion.  She deferred ruling on a request by Barracuda for an order to show cause but noted

10  an order "may well be appropriate, in order to address the immediate issues of establishing

11  genuine deadlines for the rest of production after a very belated start by [Optrics]."  "The Court,"

12  she wrote, "recognizes that [Optrics] initiated the lawsuit and should have been prepared to engage

13  in discovery but needlessly stalled its production by erroneously claiming that searching and

14  sorting of its data must take place on site at [its] offices [in Canada].  [Optrics] did not retain its

15  Canadian eDiscovery service provider . . . and provide its data to this service provider until after

16  August 20, 2019."  Even though Optrics had requested three extensions to produce documents

17  responsive to Barracuda's RFPs, it had "failed to complete its production by the deadline it

18  requested every time."  Judge Laporte ordered Optrics to file by September 19, 2019 a schedule

19  that included "specific and realistic" deadlines for the production of documents, *id.* ¶ 1, and

20  ordered it to produce a privilege log and all remaining documents response to Barracuda's first set

21  of requests by October 15, 2019, absent compelling circumstances demonstrated by a declaration

22  under penalty of perjury, *id.* ¶ 2.  She registered "serious skepticism" over Optrics' claims that it

23  did not have certain responsive documents that Barracuda had argued were missing from

24  production.  *Id.* ¶ 3.  She ordered that for each of those categories of documents, Optrics must

25  declare under penalty of perjury, "(1) what steps were taken to locate [them]; (2) if no responsive

26  documents exist, explain why they do not exist; and (3) to the extend [Barracuda] raised specific

27  concerns . . . explain why these documents do not exist."  *Id.*  Lastly, she reiterated that Optrics

28  "may not unilaterally limit its production of documents responsive to Defendant's First Set of

United States District Court
Northern District of California

1  Requests for the Production of Documents as it pleases." *Id.* ¶ 5.

2      Following Judge Laporte's September 17 order, the Parties filed competing discovery

3  letters regarding a range of discovery violations that Barracuda argued Optrics had engaged in.

4  ECF Nos. 116, 117, 118.  On October 7, Judge Laporte issued an order on those letters.  ECF No.

5  119.  She ordered the parties to file a joint discovery letter regarding a request by Optrics that the

6  Court issue letters rogatory to a court in Canada for the release of documents which Optrics had

7  argued could not be released based on Canadian privacy law.  Barracuda had requested that the

8  Court issue an order to show cause.  Judge Laporte held off on issuing one but directed that if

9  disputes remained after additional meet-and-confer efforts, Barracuda should submit a regularly

10  noticed and briefed motion for sanctions.

11      On October 25, the undersigned issued an order rejecting Optrics' request for the issuance

12  of letters rogatory.[1]  ECF No. 136.  The Court noted that Optrics brought its lawsuit in a United

13  States federal court, thus subjecting itself to the rules of this Court, and "[h]aving chose to bring

14  this lawsuit here, [] cannot hide behind Canadian confidentiality laws as a shield to discovery

15  obligations." *Id.* at 4.  The Court ordered Optrics to produce all remaining documents responsive

16  to Barracuda's first set of requests for production of documents by November 7, 2019.  Optrics did

17  not comply.

18      On December 16, 2019, Optrics moved for the Court to modify the case scheduling order

19  and again asked for an extension of discovery, this time a two-month extension of all discovery

20  deadlines.  ECF No. 154, 154-2.  Judge Seeborg granted the request on January 6, 2020.  ECF No.

21  167.  However, he warned that "no additional dilatory tactics, stonewalling, or gamesmanship will

22  be tolerated within this two-month extension, and any such behavior will result in sanctions." *Id.*

23  at 3.

24      On January 14, 2020, at a hearing on several competing discovery letters, Optrics' counsel

25  informed the Court that its e-discovery counsel, Heuristica, had abruptly withdrawn from

26  representing it the night before.  Later that day, the undersigned issue a discovery order.  ECF

27

28  [1] Judge Laporte retired from the bench in late 2019.  Discovery disputes referred to and pending before her were reassigned to the undersigned.

5

180.  The Court, having reviewed the testimony from the document custodian 30(b)(6) depositions which it had previously authorized, found that Optrics had clearly failed to prepare for the depositions and thus substantively impaired the value of those depositions and "thwart[ed] the purpose of the Court's order." *Id.* at 4-5.  In particular, Optrics had failed to provide the search terms it used to search for documents.  One of its two designated witnesses, Ostergaard, lacked knowledge about whether any of Optrics employees used Gmail accounts to conduct business.  And Ostergaard had offered testimony contradictory to the other witness, Blair Zingle, about what Optrics had done to respond to certain requests for production, whether preservation notices were sent to Optrics employees, and what, if anything, Optrics did to collect Eudora email, what backup or deletion policies Optrics had, who was responsible for searching the network drive and electronic archiving, and whether the person responsible in fact did so.  The Court ordered a renewed Rule 30(b)(6) deposition of Optrics concerning those issues.

On January 28, 2020, Barracuda moved to compel Optrics' compliance with the Court's September 17, 2019 (ECF No. 114) and January 14, 2020 (ECF No. 180) discovery orders.  ECF No. 205.  The Court held a hearing on that motion on February 6, 2020.  At the time of the hearing, only days from the close of fact discovery, Optrics *still* had not found an e-discovery specialist to take over data storage and management from Heuristica after it abruptly quit.  Tr. of Feb. 6, 2020 Mot. Hearing at 3:6-10, ECF No. 224.  It still had not complied with the Court's September 17, 2019 order that it produce a privilege log and all remaining responsive documents to Barracuda's first set of requests for production.  And it still had not complied with paragraph 3 of that order, directing it to file a declaration after substantially completing production of each category of responsive documents outlined in that order.  Furthermore, Terreri was unwilling or unable to speak intelligently about when, *if ever*, Optrics would substantially complete production.  Barracuda informed the Court that Optrics had given it the search terms it used only five days before the hearing, even though the Court ordered they be produced in its January 14 order.  Finally, Terreri informed the Court that Optrics' Canadian counsel had told him that Optrics' Rule 30(b)(6) witness, who was residing in Canada, might not even show up for a deposition planned in the Bay Area on February 12 and 13, because Optrics feared he might be arrested upon arrival in

the United States, for reasons that were less than clear.  The Court ordered Terreri to inform

Barracuda in advance if that was going to be the case, in order to spare Barracuda the expense of

having to prepare for the deposition.

In its February 7 order following the hearing, the Court noted again that Optrics was in

violation of paragraph 2 of the Court's September 17, 2019 order, and that because it did not know

if it had substantially completed any of the categories of production outlined in paragraph 3 of that

order and had not served the required declarations, it had "utterly defeat[ed] the purpose" of that

paragraph.  ECF No. 219.  The Court wrote:

> Optrics is now way past any "limited" extension [to the deadlines in
> the discovery orders], there are no declarations substantiating the
> delay, and the circumstances could not be any less compelling.  The
> long and short of it is that Optrics unjustifiably delayed providing
> documents to its ediscovery counsel at Heuristica, who have not
> completed privilege review and who for the most part have stopped
> working for Optrics.  At the hearing, Optrics was unwilling to predict
> when it will produce the privilege log it was supposed to produce four
> months ago.  The Court declines to issue another order telling Optrics
> to comply with the previous order.  The previous order was already
> an order.

*Id.* at 1.  The Court concluded that Barracuda had exhausted the discovery letter brief procedure

and gave it the green light to move for sanctions.  *Id.* at 1-2.

On February 11, on the eve of the planned Rule 30(b)(6) deposition and mere days before

the close of fact discovery, Optrics signed a joint stipulation dismissing all its claims against

Barracuda.  ECF No. 225.  Optrics agreed to allow Barracuda to move forward on its

counterclaims and agreed not to oppose any attempt by Barracuda to amend its answer and

counterclaims.  Judge Seeborg granted the dismissal on February 12.  ECF No. 226.  The

following day, Optrics' counsel moved to withdraw, explaining that they had been terminated.

ECF No. 227.  In granting the motion, the Court gave Optrics 30 days to find new counsel,

cautioning that "[w]hile Optrics has the right to terminate existing counsel at any time, this right

does not entail a right to an open-ended stay until Optrics finds a suitable replacement."  ECF No.

241 at 5.

**B.      Optrics' Failure to Preserve Electronic Data**

Optrics' utter failure to meet discovery deadlines or comply with Court orders was not the

United States District Court
Northern District of California

end of it.  Optrics' Rule 30(b)(6) designee, Shaun Sturby, testified that Optrics knew it was under threat of litigation with Barracuda since 2013.  Decl. of Richard Cheng in Supp. of Sanctions Mot. ("Cheng Decl."), ¶ 28, Ex. F., Feb. 7, 2020 Dep. of Shaun Sturby ("Sturby Dep.") at 70:11-16, ECF No. 236-6.  Nevertheless, Optrics never issued a litigation hold instructing its employees not to delete any data related to Barracuda, *id.* at 70:17-71:8; Cheng Decl. ¶ 26, Ex. D, Sept. 7, 2019 Dep. Tr. of Bording Ostergaard ("Ostergaard Dep.") at 113:19-114:1, ECF No. 236-4.  Sturby testified that Optrics started using the email archiving software MailStore only in 2016 or '17, and that prior to 2016 Optrics had no system in place for archiving emails.  *Id.* at 15:7-9, 49:7-11, 70:6-8.  He could not recall when Optrics began using StorageCraft to back up individual desktops but testified that it was not until after 2013, and he could not be sure if Optrics still used StorageCraft in 2017.  *Id.* at 61:5-62:5.  Prior to that, Optrics had no desktop backup system, and employees used only snapshots which are no longer accessible.  *Id.* at 82:23-83:6.  Even when using StorageCraft, individual backups were retained for only 30 days, after which the backups "disappeared," *id.* at 62:13-19, and Sturby testified that he didn't know whether that deletion feature could be changed or overridden to extend the retention period, *id.* at 80:6-10.[2]  Even after months of discovery disputes, the retention policy was still 30 days.  *Id.* at 54:6-10.

## C.  Optrics Initially Drove Data Collection Itself

Barracuda served its document requests in March 2019, and Optrics' counsel hired its first e-discovery vendor, CloudNine, in late April 2019.  Cheng Decl. ¶ 25, Ex. C, Feb. 11, 2020 Dep. of CloudNine ("CloudNine Dep.") at 9:24-10:3, ECF No. 335-10.  Ostergaard testified that he personally ran keyword searches of his emails using a basic search function on his email client, Eudora, and printed to PDF only those emails which he considered responsive.  Ostergaard Dep. at 57:5-14, 80:21-23, 101:19-25.  According to Ostergaard, while identifying responsive emails he did not open or look at the content of emails generally, but instead relied on the subject line of emails and then sorted by sender.  *Id.* at 57:7-58:6, 86:2-10.  Furthermore, Ostergaard testified that

---

[2] The Court recognizes Ostergaard's testimony that his Eudora emails were lost each time his data was migrated from PC to PC, but it is not clear from the deposition transcripts in the record that Ostergaard's PC was swapped out during the relevant time period.  Therefore, the Court does not assign as much importance to this testimony as Barracuda would have it do.

United States District Court
Northern District of California

he believed Eudora's search feature did not search the content of attachments but only the emails themselves. *Id.* at 103:3-10. He testified that after he uploaded to the network drive emails and attachments which he believed were responsive, some were sent to Terreri's office, some were uploaded to CloudNine, and some were uploaded to another service whose name he couldn't recall. *Id.* at 97:22-98:3.

Additionally, Zingle testified that Optrics started out by doing self-searches of its MailStore archive as well, before eventually providing the whole MailStore database to CloudNine and subsequently Heuristica. Cheng Decl. ¶ 27, Ex. E, Sept. 27, 2019 Dep. Tr. of Blair Zingle at 30:1-10, ECF No. 236-5. CloudNine, however, testified that it only received native emails in Outlook PST format. CloudNine Dep. at 12:18-23. It also testified that it did not apply any privilege terms to whatever data was provided by Optrics. *Id.* at 20:22-25. Sturby testified that the network drive was never copied to be sent to Heuristica to search for potentially responsive documents, and instead, Optrics itself, this time through Scott Young, again performed searches on the drive to locate responsive documents. Sturby Dep. at 54:17-55:4. Sturby testified that Young performed searches on various Optrics desktops in October 2019 using a basic Windows search function. *Id.* at 60:7-14.

## II.   LEGAL STANDARDS

"'It is well established that district courts have inherent power to control their docket[s].'" *Ready Transp., Inc. v. AAR Mfg.*, 627 F.3d 402, 404 (9th Cir. 2010) (quoting *Atchison, Topeka & Santa Fe Ry. v. Hercules, Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998)). That power includes sanctions and "permit[s] a district court to go as far as to dismiss entire actions to rein in abusive conduct." *Ready Transp.*, 627 F.3d at 404 (citing *Atchison*, 146 F.3d at 1074). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *see also Thompson v. Hous. Auth. of Los Angeles*, 782 F.2d 829, 830 (9th Cir. 1986) (per curiam) (requiring a district court to weigh, among other factors, "the availability of less drastic sanctions" before resorting to dismissal as a sanction). A court may assess attorneys' fees pursuant to its

9

inherent power as a sanction for the "'willful disobedience of a court order,'" or "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 45-46 (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975)).

A court may also impose sanctions pursuant to Rule 37(b)(2) against a party who "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). The Rule "gives a district judge discretion to make such orders . . . as are just in regard to a party's failure to obey a discovery order, including dismissal." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998) (quotation marks and citation omitted). The Rule lists a number of sanctions which may be appropriate for a violation of a discovery, and provides, "[i]nstead of or in addition to [those sanctions], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(A), (C). "Moreover, sanctions are appropriate even if the failure to respond was not willful." *Sabel v. City & Cty. of San Francisco*, 2017 WL 3670783, at *6 (N.D. Cal. Aug. 25, 2017) (citing *Lew v. Kona Hosp.*, 754 F.2d 1420, 1426 (9th Cir. 1985)).

## III. DISCUSSION

Sanctions are warranted here, both under Rule 37 and pursuant to the Court's inherent power. As Judge Seeborg aptly noted, discovery in this matter "necessitated near constant Magistrate Judge intervention and multiple adjustments to the case schedule." ECF No. 303. And to no avail. Judge Laporte first ordered Optrics to produce a privilege log and all documents responsive to Barracuda's first set of requests no later than <u>August 5, 2019</u>. Optrics requested additional time to complete production, until August 13, and then requested another extension until August 31. Judge Laporte granted both extensions but warned that no more would be granted without Optrics having to respond to an order to show cause. But then Optrics missed that deadline also. It still had not retained a Canadian e-discovery firm by August 20 and thus failed to completed production by August 31. On September 17, Judge Laporte, noting that Optrics had failed to complete production by any of the prior deadlines, set another cutoff date of October 15. On October 7, amid still ongoing discovery disputes, she ordered Barracuda to file a motion for

sanctions if meet-and-confer efforts failed.  Optrics missed the October 15 deadline.  On October 25, the undersigned gave Optrics even more time, ordering it to produce all remaining responsive documents by November 7, but Optrics did not meet that deadline either.  It unjustifiably delayed providing documents to its e-discovery counsel at Heuristica, who never completed privilege review and abruptly stopped working for Optrics.  On February 6, 2020, months after the November 7 deadline, Optrics *still* had not produced a privilege log or fully complied with Judge Laporte's September 17 order, including that order's directive that it provide declarations explaining why certain categories of responsive documents do not exist.  Worse yet, its counsel had no idea of when, *if ever*, production would be completed.  By the time the parties briefed the sanctions motion and began settlement efforts with Judge Beeler, well into summer 2020, it *still* hadn't been.  Instead, after months of repeated Magistrate Judge intervention, repeated and generous deadline extensions, multiple discovery hearings and orders, and several warnings that sanctions were in the cards, Optrics withdrew its claims at the eleventh hour on the eve of an important deposition.  Optrics demonstrated a flagrant indifference to this Court's orders.  By dragging its feet and unjustifiably failing to produce documents or a privilege log in contravention of several Court orders over the course of nearly a year, it effectively told the Court it did not care what the Court orders.

Also, Optrics failed to put in place a litigation hold, and there is a strong possibility that it lost potentially relevant documents as a result, it had a retention period of only 30 days on its data preservation software and never bothered attempting to extend it, and it initially put its own people in charge of collecting data to be produced.  Lastly, Optrics clearly failed to prepare for its Rule 30(b)(6) depositions and thus substantively impaired the value of those depositions, forcing the Court to order a renewed deposition.  Optrics' conduct clearly warrants sanctions.  *See UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc. Copyright Litig.)*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. Oct. 24, 2006) ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.") (citations omitted); *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012) ("[I]t generally is recognized that when a company or organization has a

1   document retention policy, it 'is obligated to suspend' that policy and 'implement a "litigation

2   hold" to ensure the preservation of relevant documents' after the preservation duty has been

3   triggered.") (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 511 (D. Md. 2009));

4   *Grove City Veterinary Serv., LLC v. Charter Practices Int'l, LLC*, 2015 WL 4937393, at *6 (D.

5   Or. Aug. 18, 2015) ("[W]here a party's failure to implement a litigation hold results in the

6   destruction of relevant documents, it can result in sanctions against it.") (citing *Knickerbocker v.*

7   *Corinthian Coll.*, 298 F.R.D. 670, 682 (W.D. Wash 2014) (granting motion for sanctions where

8   defendant failed to impose a litigation hold on documents in its possession, resulting in destruction

9   of evidence).

10  **A.      The Appropriate Sanction**

11          Barracuda had argued that the Court should issue terminating sanctions or preclusionary

12  sanctions.  However, the parties have settled, and those types of sanctions would therefore be

13  meaningless at this stage.  Also, the parties seem to anticipate another form of sanctions, monetary

14  sanctions, are forthcoming.  *E.g.*, Joint Status Update, ECF No. 359 ("Under the settlement terms,

15  the parties will file a stipulation of dismissal after certain obligations are completed by Optrics and

16  collection of any sanctions award issued by Judge Hixson.").[3]  And indeed, monetary sanctions are

17  clearly warranted here.

18          "Once a district court makes a finding of bad faith, it has the discretion to award sanctions

19  in the form of attorneys' fees against a party or counsel."  *Haeger v. Goodyear Tire & Rubber Co.*,

20  813 F.3d 1233, 1246 (9th Cir. 2016) (citation and internal quotation marks omitted).  Optrics'

21  multiple discovery violations and repeated failures to comply with Court orders were willful and

22  in bad faith.  *See Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) ("Disobedient conduct

23  not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad

24  faith, or fault."); *Haeger*, 813 F.3d at 1246 (district court did not abuse discretion in finding bad

25  faith where party, among other things, "adopted a plan of making discovery as difficult as

26

27  _____

28  [3] At the February 4, 2021 hearing, the parties confirmed on the record that terminating or
    preclusionary sanctions are moot in light of the settlement, but that the request for monetary
    sanctions is still live.

United States District Court
Northern District of California

possible, providing only those documents they wished to provide, timing the production of the small subset of documents they were willing to turn over such that it was inordinately difficult for Plaintiffs to manage their case").

Optrics has both unreasonably delayed and also prevented the completion of full discovery by, among other things, initially attempting and failing to complete e-discovery on its own without a proficient e-discovery vendor.  Optrics initially attempted discovery by having its own partners determine what documents were responsive, and then individually culling data using basic search functions which often times wouldn't even search the content of emails or files and thus would almost certainly have missed responsive data.  *See* Cheng Decl. ¶¶ 10-12.  A client-led search like the one here, where Optrics had no experience with electronic discovery, was not reasonable.  *See, e.g., De Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*, 2013 WL 4511925, at *2 (N.D. Cal. 2013) ("In the era of e-discovery, attorneys must take 'responsibility for ensuring that their clients conduct a comprehensive and appropriate document search.'"); *Markey v. Lapolla Indus., Inc.*, 2015 WL 5027522, at *19-20 (E.D.N.Y. 2015) (imposing sanctions in part because counsel was "required to conduct a more thorough investigation of the discovery in Plaintiffs' possession prior to [service]" and "failed to adequately oversee Plaintiff's document production…"); *Knickerbocker*, 298 F.R.D. at 678 ("Counsel bear responsibility for coordinating their clients' discovery production" and failure to do so may warrant sanctions.).  Optrics' failure to put in place a litigation hold or even to check whether it could extend the 30-day retention period for its data storage software was a substantial violation of its duty to preserve documents and potentially led to a loss of relevant data.  Also, Optrics belatedly engaged its first e-discovery specialist, CloudNine, only to replace it with Heuristica in August 2019, only to have Heuristica abruptly quit months later and throw into limbo the state of Optrics' production all over again.  Optrics failed to produce a competent witness to testify regarding its ESI methodologies, failed to comply with numerous discovery orders in spite of repeated warnings to do so, and failed to complete document production or produce a privilege log.  Optrics even went so far as entertaining the idea of refusing to send witnesses to the United States to participate in a court-ordered deposition.  This conduct has not only forced Barracuda to incur additional attorneys' fees but has also forced the

1   Court to expend considerable resources beyond what was necessary.  Accordingly, the Court will

2   award attorneys' fees and related costs.

3               a.      **Amount of Fees**

4         Barracuda's lead counsel, Karineh Khachatourian, states that the following attorneys

5   performed legal work in connection with Optrics' discovery violations at the following hourly

6   billing rates: herself ($600/hr); Partner Phillip K. Wang ($555/hr); Associate Nikolaus A.

7   Woloszczuk ($475/hr); Associate Wanli Chen ($425/hr); Associate Soyeon Jeong ($400/hr).[4]

8   Decl. of K. Khachatourian in Supp. of Sanctions Mot. ("Fees Decl.") at ¶ 2, ECF No. 235;

9   Supplemental Fees Decl., ¶ 8, ECF No. 297-1.

10        According to Khachatourian, Barracuda incurred the following categories of fees and

11   related fee amounts:

| | | |
|---|---|---|
| (1) | analyzing Optrics' productions to identify missing categories of documents and formatting issues such as missing metadata and missing email attachments | $53,304.88 |
| (2) | drafting discovery letter briefs and court-ordered discovery status updates regarding Optrics' incomplete discovery responses and violations of court orders as well as related motions to seal due to Optrics' rejected confidentiality designations | $42,447.32 |
| (3) | preparing for and attending numerous court hearings regarding Optrics' incomplete discovery responses and violations of court orders | $12,908.16 |
| (4) | preparing for and taking two court-ordered Rule 30(b)(6) depositions of Optrics regarding its incomplete discovery responses and insufficient document collection efforts as well as deposing Optrics' former e-discovery vendor CloudNine regarding Optrics' insufficient document collection efforts | $46,849.42 |
| (5) | drafting a response to Optrics' request for letters rogatory which the Court denied as "unnecessary" as a condition for Optrics to produce documents in its possession | $11,739.13 |
| (6) | attorneys' fees for legal work performed by Canadian counsel in responding to Optrics' request for letters rogatory | $12,048 |
| (7) | opposing Optrics' December 2019 motion to modify the case schedule, ECF Nos. 154, 167 | $8,447.50 |

---

[4] Optrics does not challenge the hourly rate of any of Barracuda's counsel.  The Court finds the rates reasonable.  *See, e.g.*, *Oldoerp v. Wells Fargo & Company Long Term Disability Plan*, 2014 WL 2621202, at *2 (N.D. Cal. June 12, 2014) ($600 for lead attorney was a reasonable hourly rate for his services); *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1001–02 (N.D. Cal. 2012) (hourly rate of $550 was reasonable for experienced attorney).

| | | | |
|---|---|---|---|
| (8) | moving to quash Optrics' deposition subpoenas to Barracuda's lead trial counsel and to Barracuda's owner, Thoma Bravo LLC | $22,699.88 |
| (9) | obtaining discovery from non-party j2 Global, Inc., including filing a motion to compel in the Central District of California (Civil Action 19-mc-00146-PSG (PJWx)) and also having to oppose j2's motion for reconsideration and ex parte proceedings | $147,092.99 |
| (10) | drafting the motion for sanctions | $56,064.44 |
| (11) | preparing Barracuda's Reply Brief in Support of Motion for Sanctions | $30,824.52 |
| (12) | costs associated with court reporters and transcripts | $5,233 |
| Total | | $449,659.24 |

Fees Decl. ¶¶ 3-6; Reply Fees Decl. ¶ 8, ECF No. 297-1.  Optrics argues that Barracuda's fees are excessive because it fails to show a causal link between its violations and some of the fees claimed.

Fee awards, if awarded, are subject to two conditions.  *Superior Consulting Servs., Inc. v. Steeves-Kiss*, 2018 WL 2183295, at *1 (N.D. Cal. May 11, 2018), *aff'd by* 786 Fed. Appx. 648 (2019) (citing Fed. R. Civ. P. 11(c)(2), (4)).  The award must be limited to fees directly resulting from the violation, and the fees awarded must be reasonable. Fed. R. Civ. P. 37(b)(2)(C) ("the court must order the disobedient party, the attorney advising that party, or both to *pay the reasonable expenses*, including attorney's fees, *caused by the failure*") (emphasis added); *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186, n. 5 (2017) ("Rule-based and statutory sanction regimes similarly require courts to find such a causal connection before shifting fees.") (quoting Rule 37(b)(2)(C)); Civ. L.R. 37-4 ("attorney fees, directly caused by the alleged violation or breach").  A "court can shift only those attorney's fees incurred because of the misconduct at issue. . . [The] causal connection . . . is appropriately framed as a but-for test: The complaining party [] may recover only the portion of his fees that he would not have paid but for the misconduct." *Goodyear Tire*, 137 S. Ct. at 1186-87 (citations and internal quotation marks omitted).  "Courts typically determine reasonableness by conducting a lodestar analysis of the hours expended and the hourly rate charged." *Superior Consulting Servs., Inc. v. Steeves-Kiss*, 2018 WL 2183295, at *1 (N.D. Cal. May 11, 2018) (citing *McGrath v. Cty. of Nevada*, 67 F.3d

15

248, 252 (9th Cir. 1995)).

As a preliminary point, Optics' argument that the undersigned limited sanctions to only those incurred for those violations of Judge Laporte's September 17, 2019 order is wrong. The Court did no such thing. Simply because the Court explicitly authorized Barracuda to "now move for sanctions" after discussing Optics' repeated and persistent violations of that particular order does not mean that the Court intended to limit sanctions to only those incurred as a result of those particular violations (though, arguably, all the fees Barracuda claims fall into that bucket, as they were all incurred trying to force Optics to finish production and produce a privilege log), and nothing in the Court's order suggests that. *See* ECF No. 219. Also, that argument overlooks the multiple other times the Court authorized sanctions.

The Court turns now to Optics' specific objections to Barracuda's categories of fees:

(1) Optics argues that fees incurred analyzing Optics' productions to identify missing categories of documents, metadata, and email attachments are part of normal discovery. Barracuda counters that this is *not* a normal discovery activity, that parties ordinarily review discovery for substance and "not to identify gaping holes in productions." Reply at 20. It also argues that Optics made the review more difficult and time consuming because of the poor way it collected and produced documents, including producing emails with broken attachment links. Both sides have a point. In a case with any significant document production, at least some attorney time is spent checking on the completeness of the other side's document production. However, in this case Optics' discovery abuse and serial violations of Court orders inordinately magnified the burden on Barracuda. Barracuda clearly incurred unnecessary fees sorting through and trying to identify holes in Optics' shoddy and staggered productions. Optics complains that Barracuda did not specify with precision the amount of work that "was not otherwise necessary" for purposes of sanctionable costs, but given the nature of the harm inflicted on Barracuda, that demands the impossible. Under the circumstances, it is reasonable to infer that Optics' misconduct at least doubled the amount of work Barracuda had to perform in this area. Accordingly, the Court awards Barracuda half of these requested fees, for an amount of $26,652.44.

(2) Optrics argues that Barracuda has not shown is entitled to fees incurred drafting discovery letter briefs and court-ordered discovery status updates because it intentionally lumped together all discovery letter briefs into one total sum and didn't separate out briefing prepared in connection with good-faith disputes.  Barracuda counters that Optrics "does not identify even one example" of a good-faith dispute, "[a]nd it cannot since BNI was forced to engage because of Optrics' continued failure to comply."  Reply at 21.  The Court will again split the baby.  It is true that the solid majority of discovery briefing in this case related to Optrics' misconduct that is the subject of this sanctions order.  But it is also true that Optrics did not lose on every issue presented by that briefing, *see* ECF No. 180 (ruling in Optrics' favor on a few issues), and even in a case without sanctionable misconduct, there is often some discovery briefing.  The Court awards Barracuda half of its requested fees, or $21,223.66.

(3) The same is true of the third category of fees.  Optrics argues that the majority of discovery disputes were not sanctionable and Barracuda has failed to demonstrate what time was spent preparing and attending court hearings related to sanctionable conduct.  But as noted, the solid majority of the discovery disputes and hearings in this case related to the sanctionable conduct that is the subject of this order.  The Court awards half of these fees, or $6,454.08.

(4) Optrics next contends that Barracuda should not recover fees and costs for the Rule 30(b)(6) depositions regarding Optrics' discovery efforts, arguing that such depositions are "very common" and a "normal party of discovery."  However, these particular Rule 30(b)(6) depositions were Court-ordered precisely because of Optrics' sanctionable conduct that is the subject of this order.  *See* ECF No. 102.  Further, the Court has no trouble concluding that but-for Optrics' flagrant violations of Court orders and its Rule 30(b)(6) witnesses' inability to meaningfully respond during depositions, Barracuda's deposition of CloudNine would not have been necessary. It was not unreasonable for Barracuda to go forward with that deposition when it did. Accordingly, the Court awards the full amount of these fees, $46,849.42.

(5) The Court agrees with Optrics that its request for the issuance of letters rogatory to Canadian courts and its arguments for the necessity of those letters was a good faith dispute and therefore outside of sanctionable costs.  The Court denies the amount which Barracuda claims for

United States District Court
Northern District of California

1   drafting a response to Optrics' request.

2       (6) Similarly, the fees incurred by Barracuda's Canadian counsel in responding to Optrics'

3   requests for letters rogatory are denied.

4       (7) The Court also denies Barracuda's request for fees related to opposing Optrics' December

5   2019 motion to modify the case schedule.  That motion was made in part because of events well

6   outside Optrics' control, and the motion was granted.  The Court does not find that motion "was

7   part and parcel" of Optrics' discovery misconduct, as it was made in response to wildfires and

8   power grid shutdowns in the District.

9       (8) The Court allows half of the fees incurred by Barracuda in moving to quash Optrics'

10  deposition subpoenas of Barracuda's lead counsel and its owner, Thoma Bravo.  Although Optrics

11  eventually withdrew the subpoena against Bravo because Bravo did not have any relevant

12  information, ECF No. 141, the Court is unable to find that the subpoena was served in bad faith.

13  By contrast, Optrics' service of a subpoena on Barracuda's lead outside counsel was in bad faith.

14  The Court quashed the subpoena because the information sought could be obtained from other

15  sources and because the subpoena easily failed the standard for deposing opposing counsel.  ECF

16  Nos. 137.  Because Barracuda does not break out the $22,699.88 by subpoena for these two

17  motions to quash, the Court divides the number in half and awards $11,349.94.

18      (9) The Court cannot award fees related to Barracuda's obtaining discovery from j2 in the

19  Central District of California.  Barracuda served notice of its subpoena on j2 on March 19, 2019

20  (*see* ECF No. 286-5), two days before it served its first set of RFPs on Optrics (*see* Ostergaard

21  Decl., ¶ 13, ECF No. 285-5) and several months before Barracuda first raised any discovery issues

22  with the Court.  *See* ECF Nos. 83, 87.  Thus, the Court cannot conclude that Optrics' discovery

23  misconduct was the but-for cause of Barracuda's discovery practice against j2 in the Central

24  District.

25      (10)     The Court awards the full amount of fees Barracuda incurred in drafting the

26  Sanctions Motion, $56,064.44.

27      (11)     The Court awards the full amount of fees Barracuda incurred in preparing its Reply

28  brief, $30,824.52.

(12)     The Court awards half the costs associated with court reporters and transcripts, $2,616.50, for the same reason as described above for category 2.

In total, the Court awards fees and costs in the amount of $202,035.00.  This sanction is a reasonable and appropriate deterrent given the extraordinary discovery misconduct and repeated violations of Court orders in this case.

### b.     Who Should Pay

Optrics spends a good portion of its Opposition attempting to shift blame away from itself by asserting that its former counsel, and in particular Terreri, are responsible for all of its discovery violations.  According to Optrics, it complied with all of Terreri's instructions during discovery and relied on its U.S. counsel and followed their advice.  Optrics argues that Terreri and Neibaron "began violating court orders as soon as discovery began, [but] the serious nature of these violations was unknown to Optrics," and Optrics did not know and would not have appreciated the significance of those violations.  In Ostergaard's declaration, Ostergaard testified that Terreri and Neibaron "never provided specific instructions or a document preservation or back-up plan," and that they "initially gave Optrics only general suggestions, including sending a link to an article about 'self-collection.'"  Decl. of Bording Ostergaard in Supp. of Optrics' Opp'n ¶¶ 12-13, ECF No. 286-1.  According to Ostergaard, Terreri and Neibaron retained CloudNine, but neither they nor CloudNine actively managed the data collection process.  *Id.* ¶ 13.  Ostergaard testified that Terreri and Neibaron did not explain to Optrics the serious ramifications of violating the Court's orders.  *Id.* ¶ 18.  They designated Ostergaard and Zingle as Optrics' 30(b)(6) witnesses, but then did not adequately prepare them for their depositions.  *Id.* ¶ 20.  According to Ostergaard, he expected Terreri and ESI attorneys to produce a privilege log to Barracuda before the February 6 discovery hearing.  *Id.* ¶ 23.  He testified that Terreri advised Optrics that, "in order to minimize potential monetary discovery sanctions, it should dismiss its SAC in its entirety," and Optrics was uncomfortable doing so because it still desired to pursue claims.  *Id.* ¶ 27.  However, Terreri explained that Optrics could still get the desired outcome if it prevailed against Barracuda's counterclaims.  *Id.*  Ostergaard testified that Terreri never showed the stipulation to anyone at Optrics and never informed Optrics that he had also agreed to allow Barracuda to amend

19

its counterclaims.  *Id.*  In its Opposition, Optrics argues that because the Court berated Terreri for

his "dereliction of duty," he discovered that "personal sanctions" were forthcoming.  Opp'n at 13,

ECF No. 286.  According to Optrics, Terreri, put "on his heels" and in a haste to avoid sanctions,

attempted to appease Barracuda at Optrics' expense and negotiated a "one-sided stipulation . . .

that was never shown to Optrics."  *Id.* at 1, 13.  "That egregious stipulation," Optrics argues,

"hand-cuffed Optrics into dismissing all of its claims without receiving anything in return, while

allowing [Barracuda] to continue seeking recovery on its counterclaims."  *Id.* at 1.

      Terreri tells quite a different story.[5]  According to Terreri, he advised Optrics that Terreri

Law could not and would not manage the collection of Optrics' electronic data, and that it did not

have the software or the personnel to manage the e-discovery.  Supplemental Decl. of Terreri in

Supp. of Reply to Optrics' Opp'n ("Terreri Decl.") ¶ 2, ECF No. 305-1.  He testified that Optrics

informed him that it intended to self-collect "and the risks were discussed," and that Optrics

"insisted on self-collection."  *Id.* at ¶ 4.  "Optrics as a tech company assured [Terreri] that it would

fully and completely search for and provide the responsive documents to the third[-]party vendor

initially retained, CloudNine."  *Id.*  Contrary to Optrics' assertion, Terreri testified that "the

potential of issue preclusion, terminating sanctions, and monetary sanctions were specifically and

frequently discussed throughout the summer of 2019 through the termination of Terreri as counsel

. . . ."  *Id.* ¶ 5.  He testified that he told Optrics that Heuristica should collect and process all

categories of document requests "as the most certain way to defend the completeness of its

production and to locate any documents inadvertently not produced," but that "Optrics did not

authorize that work, and ESI attorneys were retained and asked to review and assist with

---

[5] The Court **OVERRULES** Optrics' objections (ECF No. 331) to Terreri's Supplemental
Declaration (ECF No. 305-1).  Terreri was hamstrung in responding to Barracuda's motion until
Optrics filed its opposition throwing him under the bus.  *See* California State Bar Formal Opinion
No. 1997-151 ("even after withdrawing from the case or his employment is otherwise terminated,
Attorney must continue to maintain Client's confidential information, unless Client contends that
the request for sanctions is based on conduct for which Attorney is solely responsible, and
Attorney disputes this contention.").  Only after Optrics filed its opposition seeking to saddle its
former counsel with all the blame was Terreri free to defend himself from Optrics' assertions that
he was to blame.  *See id.* ("Attorney may *then* reveal Client's confidential information to the
extent necessary to defend himself against the client's claim that he was responsible for the
sanctions.") (emphasis added).  Terreri filed his supplemental declaration in a timely fashion.

defending the collection methods used as being adequate, in addition to other eDiscovery assistance." *Id.* ¶ 8.  According to Terreri, ESI attorneys advised him that they had provided Optrics with an estimate of $50,000 as the cost of producing a privilege log, but Optrics did not authorize the work. *Id.* ¶ 10.  Terreri claims he spoke with Optrics about the need to authorize that this work be performed and reiterated that, until the privilege log was created, it would remain in violation of the Court's order. *Id.*  He claims he did not withdraw from representing Optrics because he believed that Optrics would authorize the work and "had the means to come into compliance with the [Court's] orders." *Id.* ¶ 11.  However, Optrics never authorized the work necessary to create a privilege log. *Id.* ¶ 16.  Terreri insists the he did not advise Optrics to dismiss the SAC to minimize potential discovery sanctions, and that there were "other compelling reasons which were considered in deciding to dismiss the SAC in its entirety." *Id.* ¶ 17. Addressing Optrics' assertions that it never saw the proposed stipulation, Terreri testified that paper copies of the stipulation and all modifications and the final version were printed and shown to Ostergaard and Young in a meeting at Terreri's offices, and that each version was discussed. *Id.* ¶ 20.  Finally, Terreri testified that he expressly counseled Optrics "not to count on" a guarantee that the Court would stay proceedings if Optrics discharged counsel, and that "if they got one it would be unlikely to be lengthy."  *Id.* ¶ 21.

Faced with these competing statements and different versions of events, the Court has no easy way to know who is telling the truth and who is lying on each specific point.  But there is also no need.  What is certain is that both Optrics and its former counsel failed in their responsibilities.  Optrics cannot simply wash its hands of any responsibility by claiming that it didn't know what it was doing and Terreri and Neibaron never told it what to do.  Optrics' failure to preserve evidence predated its outside counsel's involvement by years.  And Optrics' disastrous self-collection of documents was done by Optrics and its partners.  Optrics also had Canadian counsel.  It was its Canadian counsel, not its U.S. counsel, who told Optrics that its data had to stay and be searched in Canada.  *See* July 22, 2019 Joint Status Update, ECF No. 94.  This necessitated hiring a Canadian e-discovery vendor, which took things to some extent out of U.S. counsel's hands.  *See* Terreri Decl. ¶ 27 ("The full Heuristica database had a login for Terreri, but

the program and interface were foreign and Terreri was relying on Optrics to authorize ESI attorneys and Heuristica to work together to produce the documents and privilege log.").  It also shows that Optrics wasn't getting e-discovery advice from U.S. counsel alone, and U.S. counsel wasn't alone in calling the shots.  Optrics' excuse that it didn't know the serious implications of disobeying court orders strains credulity—even if this is Optrics' first experience with U.S. litigation, Canada has courts and any reasonable person understands that a court's orders demand compliance.  Optrics' excuses are unavailing.  But Optrics wasn't alone in dropping the ball.  The Federal Rules of Civil Procedure impose an affirmative duty upon lawyers to "engage in discovery in a responsible manner and to conduct a 'reasonable inquiry' to determine whether discovery responses were sufficient and proper."  *Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 4858685, at *4 (S.D. Cal. Nov. 7, 2008) (quoting Fed. R. Civ. P. 26(g)); Fed. R. Civ. P. 26 Advisory Committee Notes (1983 Amendment) ("Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37."); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 12699460, at *23 (C.D. Cal. Feb. 4, 2015) (attorney "had an independent duty to supervise her client's [discovery] compliance efforts"); *Steel v. Stoddard*, 2013 WL 12064545, at *11 (S.D. Cal. Feb. 15, 2013), order amended on denial of reconsideration, 2013 WL 12064546 (S.D. Cal. Apr. 12, 2013) ("The fact that an attorney may have engaged co-counsel to assist him in the conduct of a case does not relieve that counsel of record of his duty to supervise all aspects of the litigation.").  It wasn't enough for Terreri and Neibaron to simply inform Optrics that they "could not and would not manage the collection of the electronic data" and then just keep moving for extensions while Optrics botched production, lost data, and missed deadline after deadline.  Accordingly, the Court will impose sanctions jointly and severally against Optrics and Terreri and Neibaron.[6]

---

[6] The Court has reviewed Neibaron's separate opposition to the Sanctions Motion, ECF No. 288, and it does not persuade the Court that Neibaron's participation in the litigation was so limited as to exclude her from liability.  Neibaron's assertion that she "had limited involvement in the advising and participating in the e-discovery process," ECF 288 at 1, is belied by the record. Neibaron represented Optrics in discovery by signing subpoenas; attending most meet and confers regarding discovery; signing Optrics' RFAs, interrogatories, and RFPs; attending hearings; and filing discovery status reports and extension requests.  Reply Decl. of K. Khachatourian in Supp. of Sanctions Mot. ¶ 2, ECF No. 297-1.  Her opposition, which is not accompanied by a declaration

United States District Court
Northern District of California

## IV.   CONCLUSION

For the aforementioned reasons, Barracuda's Motion for Sanctions is **GRANTED**.  The Court **ORDERS** that monetary sanctions in the amount of $202,035.00 are awarded in favor of Barracuda and against Optrics and its former counsel, Herbert L. Terreri and Grace R. Neibaron, jointly and severally, to compensate Barracuda for fees and costs incurred as a result of Optrics' prolonged discovery misconduct and repeated violations of Court orders.

**IT IS SO ORDERED.**


Dated: February 4, 2021

THOMAS S. HIXSON
United States Magistrate Judge

---

under penalty of perjury, states that Neibaron's principal involvement in the case concerned the subpoenas to Thoma Bravo and Karineh Khachatourian.  However, both subpoenas came to nothing because the former was withdrawn and the latter was quashed.  This narrow description of Neibaron's allegedly limited role in the case is radically inconsistent with the $121,000 in legal fees that Optrics paid specifically for her legal services, *see* Ostergaard Decl., ¶ 29, ECF No. 285-5, which indicates a much broader involvement in the case.

23